**James H. LOVE**

v.

**Honorable Edward HIDALGO et al.**

**Civ. No. Y–81–71.**

United States District Court,
D. Maryland.

Jan. 30, 1981.

---

John R. Miles, Upper Marlboro, for plaintiff.

Russell T. Baker, Jr., U. S. Atty., and Andre M. Davis, Asst. U. S. Atty., Baltimore, Md., for defendants; LT. J. Keith Morgan, JAGC, USN, and LCDR Eric J. Barnett, JAGC, USN, Alexandria, Va., of counsel.

MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

This action has been brought by the plaintiff, James H. Love, in an attempt to prevent his discharge from the United States Naval Academy ["USNA"]. This Court originally issued a temporary restraining order on January 15, 1981, preventing the defendants from separating the plaintiff from the USNA and assigning him to further military duty. A hearing was held on January 23, 1981, with all parties in attendance, at which time this Court indicated that further information was required from the Secretary of the Navy before it could engage in any meaningful judicial review of the Secretary's decision to accept the recommendation of the Superintendent of the USNA with regard to the discharge of the plaintiff. The Court extended the TRO for another week and has since received a declaration from the former Assistant Secretary of the Navy for Manpower, Reserve Affairs and Logistics who acted on behalf of the Secretary of Navy in all matters pertaining to personnel that have been committed to his discretion. On the basis of all of the evidence which has been presented, including the testimony offered in Court, it is the determination of this Court that preliminary relief is not appropriate at this time.

*FACTS*

This legal action has arisen as a result of a well-publicized "sex scandal" which occurred at the USNA during the fall of 1980. A conduct report was served upon the plaintiff on November 25, 1980, charging him with conduct unbefitting a Naval Officer. The charge was based upon an allegation that he had engaged in sexual activity in Bancroft Hall during the early morning hours of November 22, 1980. Five other midshipmen were also charged with having engaged in sexual activity in the Hall as a result of this same incident. Plaintiff, believing he could have been subjected to court martial proceedings, waived his right to a Conduct Hearing and on December 4, 1980, entered a plea of guilty at a conference with the Commandant. Before mak-

ing such a decision, plaintiff consulted with military counsel John B. Holt on at least three separate occasions. Commander Holt advised him fully of his rights under the procedures as well as the perceived costs and benefits of electing a Conduct Hearing. The representation given him by Commander Holt before making his decision was of a standard and quality higher than that often found in civilian judicial proceedings. But after a full consideration of the factors involved, plaintiff made a voluntary, knowing and intelligent waiver of his right to an Administrative Conduct Hearing. That same day, the Commandant conducted a hearing following which he recommended that plaintiff be separated from the USNA. On December 24, 1980, the Superintendent of the USNA affirmed the Commandant's recommendation that the plaintiff be separated from the USNA and that he also be ordered to report for enlisted duty for a period of three years. Before that decision, however, the Superintendent met with both plaintiff and plaintiff's civilian counsel (Miles). Of the five other midshipmen charged in this incident, all of whom waived their right to a Conduct Hearing and entered guilty pleas, only one received disciplinary sanctions comparable to those given the plaintiff. Midshipman Dougherty was involuntarily discharged from the USNA and ordered to active duty as an enlisted person. The only female midshipman involved, Midshipman Lamble, tendered a qualified resignation which was accepted and she was discharged with no orders to report to active duty. The other three midshipmen charged in this incident have been retained at the USNA and have been subjected to disciplinary sanctions other than discharge.

*LEGAL DISCUSSION*

█ The complaint in this action raises two basic grounds upon which the discharge of the plaintiff can be challenged in this Court. The threshold issue to be faced is whether or not the Secretary of the Navy complied with the relevant statutory guidelines and administrative procedures in discharging the plaintiff from the USNA.

There is no genuine issue as to any material fact with regard to this issue now that the defendants have supplemented the record with the administrative explanation of the Secretary of the Navy's actions. Therefore, this issue can be disposed of on the merits pursuant to the provisions of Rules 56 and 65(a)(1) of the Federal Rules of Civil Procedure. The second issue of any merit raised by the plaintiff is the constitutional due process argument. Plaintiff alleges that the disciplinary procedures applied by the Navy in his case violated his constitutional right to due process. This Court does not feel that this question of constitutional dimension can be disposed of on the merits at this time. However, neither has the plaintiff satisfied the standard for preliminary relief with regard to this issue. Thus, the motion for a preliminary injunction will be denied and the Court will reserve any ruling on this issue, pending a determination by the plaintiff as to whether or not he intends to pursue this litigation in light of the ruling of this Court today.

*Compliance with statutory guidelines and administrative procedures.*

Once the Superintendent of the USNA determines that a midshipman should be discharged for unsatisfactory conduct, Section 6962 of Title 10 of the United States Code sets forth the procedures that must then be followed in order to effect such a discharge. The Superintendent is required to "submit to the Secretary of the Navy in writing a full report of the facts." 10 U.S.C. § 6962(a). The midshipman upon whom the report is made is then to "be given an opportunity to examine the report and submit a written statement thereon." 10 U.S.C. § 6962(b). At that point, the decision is to be made by the Secretary of the Navy under the following statutory guidelines:

> "If the Secretary believes, on the basis of the report and statement, that the determination of the Superintendent ... is *reasonable and well founded,* he may dis-

charge the midshipman from the Naval Academy and from the naval service." 10 U.S.C. § 6962(b). [Emphasis added].

■ Absent some showing that Congress intended to prohibit all judicial review of the decisions of the Secretary under § 6962, such decisions will be subject to a limited scope of judicial review intended to assure that the Secretary did not act in an arbitrary or capricious or otherwise unlawful manner. *Dunlop v. Bachowski,* 421 U.S. 560, 566–68, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975); *Contractors Transport Corp. v. United States,* 537 F.2d 1160 (4th Cir. 1976). *See also,* Davis, *Administrative Law Treatise,* § 16.00 *et seq.* Furthermore, "[i]t is established, of course, that the federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations." *Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 859 (D.C.Cir.1978) (and cases cited therein). Defendants admit, as they must, that the power of judicial review extends to procedures followed by the Navy in the separation or dismissal of midshipmen. *See Andrews v. Knowlton,* 509 F.2d 898, 903 (2d Cir.), *cert. denied,* 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105·(1975) (and cases cited therein).

■ The scope of this Court's power to review decisions by the Secretary of the Navy to discharge midshipmen is limited to assuring that the Secretary did not act in an arbitrary or capricious or otherwise unlawful manner in making his determination pursuant to 10 U.S.C. § 6962(b). Nonetheless, whenever a discretionary administrative decision is subject to any judicial review, the reviewing court must be provided with a statement of reasons for the decision in order to allow for intelligent and meaningful review. *Dunlop v. Bachowski, supra* at 571; *Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *Matlovich, supra* at 857–861; *Berg v. Claytor,* 591 F.2d 849 (D.C.Cir.1978). The statement of reasons serves purposes beyond judicial review in that it "promotes

thought by the Secretary and compels him to cover the relevant points and eschew irrelevancies." *Dunlop v. Bachowski, supra* at 572. The statement of reasons also serves to inform the aggrieved person of the grounds of the administrative action so that he can plan his course of action. *Matlovich, supra* at 857.

In the present case, the Secretary of the Navy originally failed to provide any explanation for his decision to discharge the plaintiff. This was a particularly troublesome situation, given that six prior midshipmen found guilty of conduct unbefitting an officer by reason of having engaged in sexual intercourse in the Hall had all been retained at the Academy and three of the six midshipmen charged in this particular incident had also been retained. The defendants' assertion that no explanation or statement of reasons was required of the Secretary was flatly rejected by this Court. The attempt to distinguish the requirements of *Matlovich* on the basis of the decision in *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980) proved unpersuasive because of the fact that the Court in *Beller* had interpreted the Navy policy with regard to homosexuals as making their discharge mandatory. 632 F.2d at 802. That is a far different policy and degree of discretion than that found in the present situation where the record discloses that midshipmen found guilty of conduct unbefitting an officer by reason of having engaged in sexual intercourse in the Hall are treated with a wide range of disciplinary sanctions. Nor would this Court accept the argument of the defendants that an examination of the record would reveal a rational and adequate basis for the Secretary's decision and therefore obviated the need for any written explanation by the Secretary. The law is clear that "the proper focus of a reviewing court is on the reasons given by the [administrative authority] and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the [administrative authority] might have decided the matter." *United States ex rel. Checkman v. Laird*, 469 F.2d 773, 783 (2d Cir. 1972).

Having stated the requirement of an explanation of the reasons upon which the Secretary's determination was based, however, this Court concludes that the defendants have adequately fulfilled that requirement with the declaration of the former Assistant Secretary of the Navy for Manpower, Reserve Affairs and Logistics. That declaration reveals that the Assistant Secretary, on behalf of the Secretary, considered a substantial number of factors in arriving at his decision to accept the Superintendent's recommendation with regard to the plaintiff. Furthermore, the declaration of the Assistant Secretary provides an adequate basis for this Court to conduct the limited judicial review appropriate in such a case. This Court is not empowered to second-guess the correctness of the Assistant Secretary's decision but is limited to a determination of whether the action was arbitrary, capricious or otherwise unlawful. This Court is not charged with the task of running the USNA and there is nothing in the record at this point to show that the Assistant Secretary has not complied with the relevant statutory guidelines and administrative procedures in making the discretionary determination that the plaintiff should be discharged from the USNA.

*Constitutional Due Process*

It is clear that the plaintiff must be afforded some degree of procedural due process under the Fifth Amendment before he can be discharged from the USNA. Defendants acknowledged this. Students facing temporary suspensions from a public school have been held to have both property and liberty interests qualifying for due process protection, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and in three separate cases, the Second Circuit has held that service academies are subject to the Fifth Amendment and that cadets and midshipmen must be accorded due process before separation. *Andrews v. Knowlton*, 509 F.2d 898, 903 (2d Cir.), *cert. denied*, 423 U.S. 873, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975); *Hagopian v. Knowlton*, 470 F.2d 201

(2d Cir. 1972); *Wasson v. Trowbridge*, 382 F.2d 807 (2d Cir. 1967). The degree of due process to be accorded plaintiff, however, is a question that is highly dependent upon the factual context of the disciplinary proceedings which have occurred. The Court in *Hagopian, supra*, addressed this point:

"In approaching the question of what process is due before governmental action adversely affecting private interests may properly be taken, it must be recognized that due process is not a rigid formula or simple rule of thumb to be applied undeviatingly to any given set of facts. On the contrary, it is a flexible concept which depends upon the balancing of various factors, including the nature of the private right or interest that is threatened, the extent to which the proceeding is adversarial in character, the severity and consequences of any action that might be taken, the burden that would be imposed by requiring use of all or part of the full panoply of trial-type procedures, and the existence of other overriding interests, such as the necessity for prompt action in the conduct of crucial military operations. *The full context must therefore be considered in each case.*

470 F.2d at 207 [emphasis added]. In the present case, it is undisputed that the plaintiff had the right to a Conduct Hearing which would be conducted pursuant to the provisions of USNA COMDTMIDN Instruction 1620.10J. However, the plaintiff waived the right to a Conduct Hearing and entered a plea of guilty. Plaintiff has been unable to show that such a waiver was not a voluntary, knowing and intelligent waiver and, in fact, the testimony of Commander Holt would seem to indicate that waiver was voluntary, knowing and intelligent. Thus, this Court cannot find, at this time, that the resulting failure of the plaintiff to be provided all the procedural safeguards attendant to a Conduct Hearing amounted to an unconstitutional denial of due process. However, the factual context of the disciplinary proceedings is such an important factor in the constitutional due process analysis that this Court believes the plaintiff is entitled, if he so desires, to further develop-

ment of the record on this issue, before any final determination of the merits. Therefore, the constitutional due process issue will be addressed only for purposes of determining if the plaintiff is entitled to a preliminary injunction.

*Standard for Preliminary Injunction*

■ The correct standard to be applied in the Fourth Circuit by a trial court in determining whether or not to issue a preliminary injunction under Rule 65(a) was set forth in *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42 (4th Cir. 1932):

"It is sufficient [to grant the motion] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of the protection to the plaintiff as contrasted with the probable injury to the defendant." 55 F.2d at 45.

That standard, which requires application of the balance-of-hardship test, has continually been reaffirmed by the Fourth Circuit as the proper trial court standard for interlocutory injunctive relief. *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.*, 550 F.2d 189 (4th Cir. 1977); *West Virginia Highlands Conservancy v. Island Creek Coal Co.*, 441 F.2d 232 (4th Cir. 1971). In *Blackwelder*, the Court held that a trial court could properly consider the following four general factors in considering whether or not to issue a preliminary injunction:

1. Likelihood of success on the merits;
2. Irreparable harm to be suffered by plaintiff without injunctive relief;
3. Harm to other interested persons if the injunction is issued; and,
4. The public interest.

550 F.2d at 196. However, that Court cautioned that in applying such a test, the court should give those four factors the relative emphasis required by the *Sinclair* rule:

"The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely

harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered." 550 F.2d at 196.

Balancing the hardships in this case produces no clear-cut winner or loser and reveals only that both sides can be perceived to have a great deal of interest at stake in the outcome over preliminary relief. The plaintiff is a First Class Midshipman with less than one semester to complete before he is scheduled to receive his Bachelor of Science degree and his commission in the regular navy. He is presently attending classes at Annapolis and if he is denied injunctive relief, he will be discharged immediately, resulting in certain irreparable harm to his career and status. However, the Navy has agreed to defer the plaintiff's orders to report for active duty in order to allow him to complete his undergraduate education at another university. Furthermore, if the defendants ultimately prevail on the merits, plaintiff would neither be commissioned nor graduated, a factor that must be considered in light of the existing indications of the plaintiff's likelihood of success on the merits. Defendants, on the other hand, have a substantial interest in maintaining good order and discipline at the USNA. In an affidavit submitted by the Commandant, it becomes clear that the plaintiff's continued presence is perceived by the Academy officials as a significant problem impeding their performance of the functions for which they are responsible. If the press coverage of this incident is a reliable indicator then this Court does not doubt that the continuing and unresolved status of the plaintiff creates a significant disruption in the atmosphere in Annapolis. Thus, the balancing of likely harms does not produce a balance in favor of either plaintiff or defendant. As a result of this unfortunate incident, both sides will undoubtedly be harmed, regardless of what this Court decides to do. But given the present posture of this case, it would not be appropriate for this Court to use its injunctive powers to prevent the Navy from taking the disciplinary measures it considers necessary. This Court expresses no opinion regarding the ultimate merits or resolution of the plaintiff's constitutional due process claims and expressly reserves ruling on that issue. The Court is concerned over the appearance of possible disparate treatment in the Navy's handling of this matter, particularly insofar as the disciplinary sanctions applied in the plaintiff's case proved significantly more severe than those applied against Midshipman Cummings. However, the Court is not at all satisfied that such action, however unfair it may appear, rises to the level of a deprivation of constitutional due process. Should the plaintiff determine that he wishes to pursue this litigation to a determination on the merits of the due process claims, he will be entitled to do so. In the meantime, however, this Court will not compel the Navy to maintain the plaintiff in his current status as an unwanted midshipman.

Accordingly, it is this 30th day of January, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff's motion for a preliminary injunction be, and the same is, hereby DENIED;

2. That the defendant's motion for summary judgment be, and the same is, hereby GRANTED with regard to the issues of compliance with statutory guidelines and administrative procedures; and

3. That the plaintiff be, and the same is, hereby directed to file a response to defendants' motion for summary judgment on the constitutional due process issues or a voluntary dismissal of this action within twenty (20) days.