### Gregory DOUGHERTY

### v.

### Edward HIDALGO, Secretary of the Navy.

### Civ. A. No. 81–145.

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1981.

On Permanent Injunction July 8, 1981.

---

Joseph Malloy, Jr., Philadelphia, Pa., for plaintiff.

Edward Borden, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

Plaintiff, a Midshipman First Class at the U. S. Naval Academy, filed this Petition for a restraining order to prevent his discharge from the Academy. A Temporary Restraining Order was signed on January 14, 1981 by Judge Becker of this Court, which Order was later extended to February 5, 1981. A hearing for a preliminary injunction was held before this Court on February 4, 1981, all proceedings being stayed pending this Court's decision.

Plaintiff entered the U. S. Naval Academy in June, 1977. The activities giving rise to the discharge of the plaintiff from the Academy took place during the early morning hours of Saturday, November 22, 1980. The plaintiff was charged with engaging in

sexual activities with a female Midshipman in his room, encouraging other Midshipmen to participate, and having a Midshipman use a movie camera to photograph plaintiff's sexual activities with the female Midshipman. Plaintiff consulted with his military counsel Lieutenant Commander John B. Holt, JAGC, USN, who advised plaintiff to plead guilty and to waive his Administrative Conduct Hearing, which plaintiff did on December 4, 1980. On December 5, 1980, Rear Admiral W. F. McCauley, Commandant of Midshipmen, conducted a hearing, following which he recommended that plaintiff be discharged from the Academy. LCDR Holt testified that he was not permitted in the hearing room, so he sat outside the room, and the hearing lasted approximately two minutes. On December 6, 1980, plaintiff received a hearing, again without benefit of counsel, before Vice Admiral William P. Lawrence, Superintendent of the Academy. On December 24, 1980, the Superintendent transmitted his report to the Secretary of Navy recommending that the plaintiff be discharged from the Academy and further recommending that plaintiff be transferred to the Naval Reserve in an enlisted status and called to active duty for a period of three years. On January 14, 1981, the Secretary issued an Order discharging plaintiff from the Academy. Another Midshipman, Love, involved in this incident was also discharged and ordered to report as an enlisted man for a period of three years. Midshipman Lamble tendered a qualified resignation which was accepted and she was not required to report for active duty with the Navy. The other three Midshipmen involved were permitted to remain at the Academy, and have been otherwise disciplined.

The plaintiff has raised two issues concerning his discharge from the Academy. He complains that he was denied the due process in that his counsel was not permitted to represent him in the hearing room, he was not given the opportunity to be heard before an impartial tribunal, he was deprived of his right against self-incrimination, and he was deprived of the right to compel the appearance of witnesses in his favor and the right to confront witnesses against him. He further complains that the statutory guidelines set forth in 10 U.S.C. § 6962 were not complied with.

■ "It is established, of course, that the federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes and regulations." *Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 859 (D.C.Cir.1978). The decision of the Secretary in the case *sub judice* is subject to the limited scope of judicial review intended to assure that the Secretary did not act in an arbitrary or capricious or otherwise unlawful manner. *Love v. Hidalgo*, 508 F.Supp. 177 (D.C.Md.1981) citing *Dunlop v. Bachowski*, 421 U.S. 560, 566–68, 95 S.Ct. 1851, 1857–1858, 44 L.Ed.2d 377 (1975).

The Court has carefully reviewed the briefs filed by both parties, the testimony given at the hearing before this Court on February 4, 1981, the reports of the Superintendent and the Secretary, and the statements of the Midshipmen. For the reasons which follow, the plaintiff's motion for a preliminary injunction insofar as it relates to his discharge from the U. S. Naval Academy is denied. We shall, however, grant plaintiff's motion for a preliminary injunction restraining the enforcement of the order of the Superintendent of the Naval Academy and the order of the Secretary of the Navy, or any other order, transferring the plaintiff to the Naval Reserve and ordering him to active duty in an enlisted status for a period of three years.

We do not intend to substitute our judgment for that of the Superintendent and Secretary. There is no question that the "sexathon" was organized and orchestrated by the plaintiff in which he was aided in and abetted by Midshipman Lamble. The actors were solicited, the setting provided, the "show" was filmed, and everything possible was done to perpetuate this activity and the hope may have been to obtain a large audience. His discharge from the Academy may very well be warranted. However, just as the Academy has promul-

gated rules and regulations for the conduct of the Midshipmen, with penalties for disobeying those regulations, so has Congress passed laws regulating the procedures to be followed in discharging a Midshipman from the Academy. If the Superintendent expects Midshipmen to follow the rules and regulations, then he and the Secretary should follow the procedures set forth in the Act when discharging a Midshipman. Rank may have privileges, but there is no privilege to ignore the mandates of a statute.

The Court is very concerned about the procedures followed by the Naval Academy in this case. The discharge of a Midshipman is governed by Section 6962 of Title 10 of the United States Code which provides:

"(a) The Superintendent of the Naval Academy shall submit to the Secretary of the Navy in writing a full report of the facts—

(1) whenever the Superintendent determines that the conduct of a midshipman is unsatisfactory; or

(2) whenever the Academic Board unanimously determines that a midshipman possesses insufficient aptitude to become a commissioned officer in the naval service.

(b) A midshipman upon whom a report is made under subsection (a) shall be given an opportunity to examine the report and submit a written statement thereon. If the Secretary believes, on the basis of the report and statement, that the determination of the Superintendent or of the Academic Board is reasonable and well founded, he may discharge the midshipman from the Naval Academy and from the naval service."

The Superintendent prepared the report in writing and the plaintiff and his counsel, Holt, were given the opportunity to examine the report. The plaintiff then submitted a written statement, and the report and statement were forwarded to the Secretary of Navy. To this point the mandates of the Act were followed. What happened next is what concerns the Court. Instead of the Secretary making his decision at that time based on the report of the Superintendent and the statement of the plaintiff, the Secretary and the Superintendent met in Washington, D. C., at which time the Superintendent showed the Secretary the case files of the plaintiff Dougherty, of Love, and of Lamble, together with seven signed statements of other Midshipmen who had either participated in or observed the early morning "sex party." These statements were never shown to the plaintiff to afford him the opportunity to prepare a statement for the Secretary to review. One of the signed statements should never have been given to the Secretary to review since the statement was clearly hearsay. The statement begins "None of my information is first hand." However, since there have been no facts presented that the Secretary's action in issuing the discharge order was arbitrary or capricious, we shall not disturb his order at this time insofar as it relates to the discharge of the plaintiff from the Academy.

In order for the plaintiff to be entitled to a preliminary injunction, he must show: (1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to other interested persons, and (4) absence of harm to the public interest. *Hickey v. Commandant of the Fourth Naval District, et al.,* 464 F.Supp. 374 (E.D.Pa.1979) aff'd without opinion, 612 F.2d 572 (3d Cir. 1979). The plaintiff failed to meet his burden as it relates to his discharge. Plaintiff, of course, will suffer irreparable harm because of his discharge from the Academy. However, his remaining at the Academy will be very disruptive to the Administration and the Academy. Substantial harm to the Academy might result, since there could be a breakdown of discipline and order. Both sides have been harmed. Weighing all factors the Court has concluded that it will not force the Academy to retain the plaintiff until the final resolution of this case.

However, insofar as the order for the plaintiff to immediately report for three years duty in an enlisted status, the Court will enjoin that order by granting plain-

tiff's motion for a preliminary injunction. Plaintiff has met his burden in that respect. There will be no harm to anyone by granting the preliminary injunction.

The Court is concerned with that portion of the order of the Superintendent and of the Secretary directing the three years service in an enlisted capacity. Neither the report of the Superintendent, nor of the Secretary provides any specific rule, regulation or law justifying such order. The Secretary merely states: "As a general rule, a midshipman separated from the Naval Academy by reason of his own misconduct during his final year is required to discharge his military obligation by serving on active duty in an enlisted status for a period of three years." What is the basis for the "general rule"? What is the authority for its being invoked in this or any other case? Was the plaintiff made aware of this rule when he signed the agreement to attend the Academy? These questions and answers should be presented to the Court for its review.

Another concern of the Court in this case is the alleged disparate treatment of the actors in this sex scandal. The plaintiff and another Midshipman were discharged and ordered to active duty for three years in an enlisted status. The female involved was permitted to resign with no provision for active duty. The three other Midshipmen received demerits and other disciplinary measures, but no discharge. The Court cannot at this time declare that this constitutes a deprivation of plaintiff's due process rights, but might well be the subject for a later hearing and review.

## MEMORANDUM AND ORDER

### On Permanent Injunction

Plaintiff, a Midshipman First Class at the U. S. Naval Academy (Academy), filed a petition for a temporary restraining order to prevent his discharge from the Academy.

A temporary restraining order was issued on January 14, 1981 by Judge Becker of this court. A hearing was held before this court on February 4, 1981. By Memorandum Opinion and Order dated February 13, 1981, we granted plaintiff's motion for a preliminary injunction to enjoin enforcement of the orders transferring the plaintiff to the Naval Reserve and ordering him to active duty in an enlisted status for three years, and we denied plaintiff's motion for a preliminary injunction to enjoin his discharge from the Academy. Presently before the court is the question of whether the preliminary injunction is to be made permanent. An evidentiary hearing was held on June 2, 1981. The court has carefully reviewed the memorandums of law filed by each party, the testimony given at the hearings before this court on February 4, 1981 and June 2, 1981, the reports of the Superintendent of the Naval Academy (Superintendent), the Secretary of the Navy (Secretary), and the statement of the midshipmen involved. For the reasons which follow, we grant a permanent injunction restraining the enforcement of the orders of the Superintendent and the Secretary, or any other orders transferring the plaintiff to the Naval Reserve and ordering him to active duty in an enlisted status for a period of three years.

The issues raised by the parties concerning the granting of a permanent injunction are whether the Secretary of the Navy had the authority to impose the active duty obligation in light of the circumstances in the case *sub judice*, and whether plaintiff was accorded his due process with respect to his disenrollment hearings.

The government in its memorandum broadly states that "[d]isenrollment from an officer program constitutes failure by a midshipman to fulfill his agreement" as that term is employed in the statute authorizing imposition of the active duty requirement, 10 U.S.C. § 6959(b).[1] Govern-

---

1. 10 U.S.C. § 6959 provides:

(a) Each midshipman who is a citizen or national of the United States shall sign an agreement that, unless sooner separated, he will—

(1) complete the course of instruction at the Naval Academy;

(2) accept an appointment and serve as a commissioned officer of the Regular Navy, the Regular Marine Corps, or the Regular Air Force

ment's memorandum, p. 2. The cases cited by the government as authority for that sweeping statement do not support that proposition. Moreover, the government fails to make a distinction between willful and unintentional conduct leading to disenrollment.

In both cases cited by the government, *McCourt v. Culkin*, 473 F.Supp. 1247, (E.D. Pa.1979), and *Hickey v. Commandant at Fourth Naval Dist.*, 461 F.Supp. 1085 (E.D. Pa.1978), *motion for stay pending appeal denied*, 464 F.Supp. 374 (E.D.Pa.) *aff'd. without opinion*, 612 F.2d 572 (3d Cir. 1979), the plaintiffs were enrolled in NROTC programs, and understood that failure to satisfactorily complete the program could result in the imposition of the active duty requirement. The plaintiffs were placed on academic probation, yet remained at the bottom of their classes. Each plaintiff was later disenrolled for inaptitude. In *McCourt v. Culkin*, the court, relying on *Hickey v. Commandant of Fourth Naval Dist.*, construed the applicable statute, 10

U.S.C. § 2105,[2] to provide that failure to complete the required courses results in the imposition of the active duty obligation. In *Hickey*, the court held that the NROTC program's regulations and statutes imposed the active duty requirement where the individuals were determined to have *willfully* violated their agreements.

Hickey was ordered to report for active duty after failing to heed the Review Board's warnings. The *Hickey* case is distinguishable from the case *sub judice* in that Hickey willfully violated his agreement,[3] whereas Dougherty did not.

The *Hickey* court construed 10 U.S.C. § 2105 to require individuals wilfully violate their agreement in order to activate the active duty obligation. 10 U.S.C. § 6959(b), the applicable statute in the case *sub judice*, should be construed in the same way so as to require a deliberate or willful violation of the agreement. Sections 2105 and 6959 have similar legislative history and intent.[4] Therefore, it follows that both

---

for at least five years immediately after graduation; and

(3) accept an appointment as a commissioned officer in the reserve component of the Navy or the Marine Corps or as a Reserve in the Air Force for service in the Air Force Reserve and remain therein until the sixth anniversary of his graduation if an appointment in the regular component of that armed force is not tendered to him or if he is permitted to resign as a commissioned officer of that component before that anniversary.

If the midshipman is a minor and has parents or a guardian, he may sign the agreement only with the consent of the parents or guardian. (b) A midshipman who does not fulfill his agreement under subsection (a) may be transferred by the Secretary of the Navy to the Naval Reserve or the Marine Corps Reserve in an appropriate enlisted grade or rating, and, notwithstanding section 651 of this title, may be ordered to active duty to serve in that grade or rating for such period of time as the Secretary prescribes but not for more than four years.

**2.** 10 U.S.C. § 2105 provides:

A member of the program who is selected for advanced training under section 2104 of this title, and who does not complete the course of instruction, or who completes the course but declines to accept a commission when offered, may be ordered to active duty by the Secretary of the military department concerned to serve

in his enlisted grade or rating for such period of time as the Secretary prescribes but not for more than two years.

**3.** In Fall 1975 Hickey was placed on academic probation and directed not to participate in extracurricular theatrical productions. Hickey was admonished "to review his priorities and to limit his activities to those consistent with his ability to satisfy his NROTC and college degree requirements." Hickey v. Commandant of Fourth Naval Dist., supra, at 1088. Hickey willfully disregarded this warning and in the summer 1976 session, Hickey participated in the theater group and, as a result, failed a math course he failed the previous semester. The Naval Review Board found that Hickey accorded a higher priority to the theater group than his math course and that Hickey devoted an excessive amount of time to extracurricular activities resulting in his failure to meet his academic obligation and NROTC program requirements. *Id.* at 1089.

**4.** 10 U.S.C. § 2105; Added Pub.L. 88–647, title II, § 201(1), Oct. 13, 1964, 78 Stat. 1066. 10 U.S.C. § 6959; 1964 Amendment, Pub.L. 88–647 designed existing provisions as subsec. (a), and subsec. (b).

For legislative history and purpose of Pub.L. 88–647, see 1964 U.S.Code Cong. and Adm. News, p. 3943.

sections 2105 and 6959 should be read consistently so as to require a willful failure to fulfill one's agreement. The government's argument fails to make the crucial distinction between willful and deliberate conduct and conduct which is done without an intent to evade an obligation.

Prior to his entry into the Academy, plaintiff served two years as an enlisted man in the Navy. The plaintiff enlisted in the United States Navy Reserve on May 22, 1975 for a period of six (6) years. He entered on active duty with the Navy on September 5, 1975. His enlistment expired May 22, 1981. His active duty obligation expired in August 1979. The plaintiff entered the Academy in June 1977. The government tries to discount plaintiff's enlisted service by stating that plaintiff's "entire naval career has been spent enrolled in advanced educational programs ..." Government's memorandum, p. 1. Nevertheless, as an enlisted man, the plaintiff was obligated to serve at any place the Navy designated. The plaintiff, as an enlisted man, remained in the educational programs only with the Navy's permission.

The thrust of the government's argument that plaintiff should serve the three years active duty imposed by the Secretary of the Navy is that Midshipman Dougherty signed an agreement to accept the active duty obligation upon disenrollment from the Academy. However, the government has failed to produce that agreement. In place of the agreement itself, the government has offered the testimony of Midshipman Asher to establish the custom and habit of the Navy in obtaining these agreements before a prospective midshipman enters the Academy. Midshipman Asher testified he did not know Dougherty, nor did he see Dougherty sign the alleged agreement. This court need not determine the relevancy of Midshipman Asher's testimony at this time, since the testimony, even if admitted, fails to prove that Dougherty ever executed the alleged agreement.

### ORDER

The defendant is permanently enjoined from enforcing any orders transferring the plaintiff to the Naval Reserve and ordering him to active duty in an enlistment status for three years.

IT IS SO ORDERED.