Kevin T. TULLY, Plaintiff,

v.

Verne ORR, Secretary of the Air Force, Defendant.

No. 85 CV 1468.

United States District Court, E.D. New York.

May 14, 1985.

Schlam, Stone & Dolan, New York City, for plaintiff; Richard H. Dolan, New York City, of counsel.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Anne E. Stanley, Asst. U.S. Atty., Office of the Judge Advocate Gen., Gen. Litigation Div., James M. Kinsella, Capt., USAF, of counsel, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff is in his final semester as a Cadet at the United States Air Force Academy (the "Academy"). He has been "disenrolled," *i.e.*, expelled, for various academic offenses and misconduct, and he brings this action for a declaratory judgment that the Academy's disenrollment procedures violate Due Process. He now seeks a mandatory preliminary injunction directing defendant to: 1) permit plaintiff to sit for his final examinations; and 2) grade those examinations. Defendant has cross-moved to dismiss plaintiff's complaint for failure to exhaust administrative remedies.

Because of the imminence of the final examination period at the Academy, the ruling on plaintiff's request for injunctive relief must issue before defendant's cross-motion is fully briefed. The parties agreed that plaintiff's motion would be decided without an evidentiary hearing.

Accordingly, the Court has reviewed the affidavits and memoranda submitted by the parties, as well as the lengthy administrative record from Cadet Tully's numerous disciplinary hearings. For the reasons developed below, the application for a preliminary injunction is denied.

### Facts

The Academy's disciplinary system is embodied primarily in Air Force Cadet Wing Regulation 111–1 ("Regulation 111–1") and in Air Force Regulation 53–3 ("Regulation 53–3"). Regulation 111–1 defines, in great detail, the numerous classes of offenses that may be committed by cadets, and the various punishments that may be imposed for those offenses. Regulation 53–3 establishes a Cadet Disciplinary System and sets forth the procedures for disenrolling cadets from the Academy.

Under Regulation 111–1, disciplinary violations are punishable by combinations of demerits, confinements or tours, and peri-

ods of restriction. The maximum number of demerits that may be awarded for a single incident in 75; each cadet has a 100-demerit allowance for any six-month period.

Any cadet who exceeds 50 demerits in one period may be placed on conduct probation. Exceeding the 100-demerit limit causes a cadet to be deemed deficient in conduct. A cadet who is deficient in conduct after being on conduct probation "will normally be considered for disenrollment." Regulation 111–1, ¶¶ 2h, 3.

For the majority of offenses, punishments are imposed by various Academy officers. A cadet charged with more serious offenses, or with continuing misconduct, may be brought before the Commandant's Disciplinary Board ("CDB"). The CDB reviews the incident and recommends suitable demerits and punishments to the Commandant for his approval.

In addition to the disciplinary system, the Academy adheres to an Honor Code: "We will not lie, steal, or cheat, nor tolerate among us anyone who does." Prior to June, 1984, allegations of Honor Code violations were considered by honor boards made up entirely of cadets. Because the Academy's administrators believed honor boards were not functioning properly, they were suspended as of June 18, 1984. On June 25, 1984, all cases pending before honor boards or under investigation were referred to CDBs. From that date until January 6, 1985, honor cases were handled by the Cadet Disciplinary System, through the use of CDBs, pending implementation of a new honor system.

Plaintiff's troubles began in the Spring of 1984, as he neared completion of his third year. On April 27, 1984, plaintiff attended a "Dining-Out" at a neighboring Air Force base. There he insulted a superior officer, Major Garvey. As a result of his actions that evening, plaintiff was charged with misconduct.

Several days later, plaintiff submitted a term paper in his Behavioral Science 332 course (the "BS paper"). Plaintiff was later charged with plagiarism, an Honor Code violation. The day after submitting the BS paper, plaintiff violated a direct order from Major Garvey not to drive his car back to the Academy.

On May 10, 1984 a CDB was convened to review plaintiff's conduct at the Dining-Out and his violation of Major Garvey's order. Plaintiff was given 70 demerits and other punishments, and placed on conduct probation. On June 1, 1984 a cadet Honor Board was convened to review plaintiff's alleged plagiarism of the BS paper. After plaintiff told the Board he had previously used the same paper in his English 330H course (the "English paper"), the Board recessed to investigate whether plaintiff should be charged with a second count of plagiarism.

Before the cadet Honor Board could reconvene, it was abolished; and plaintiff's case was referred to a CDB. The CDB was made up of four officers and one cadet. Plaintiff was found guilty of plagiarizing both the BS paper and the English paper, and of lying about the references he used in those papers. He was given 75 demerits and additional punishments, and was continued on conduct probation.

In September, 1984, plaintiff was accused by his instructor of cheating on a Physics 411 quiz. On October 31, 1984, plaintiff went before a CDB on this charge. He was found guilty and given 75 demerits and other punishments. Additionally, the CDB recommended that plaintiff's case be reviewed by a Hearing Officer ("H.O.") to determine whether plaintiff should be disenrolled from the Academy. Plaintiff was formally notified on November 23, 1984 that he was being considered for disenrollment and that he had a right to review by an H.O.

Hearing Officer review of a cadet's conduct is governed by paragraph 30 of Regulation 53–3. A cadet notified that an H.O. is to be appointed must elect whether to appear before the H.O. Should he choose to appear, as plaintiff did, he must receive written notice of the time and place of the hearing, the specific allegations against him, and the names and addresses of wit-

nesses to be called. Additionally, the cadet must receive copies of all documents to be introduced at the hearing. Regulation 53–3, ¶ 30(a)(3).

A cadet may consult with counsel prior to the hearing; because it is a non-adversarial proceeding he may not have counsel at the hearing. During the hearing, the cadet may cross-examine witnesses and present evidence in his own behalf. *Id.* ¶¶ 30(a)(4), (a)(6).

The H.O. reviews all the evidence against the cadet and sends findings of fact to the Academy Superintendent. The H.O. makes no recommendations regarding disposition of the case. After receiving any rebuttal evidence a cadet may submit, the Superintendent determines what action to take. Should he believe disenrollment is warranted, the Superintendent makes that recommendation to the Academy Board. If that body also recommends disenrollment, it makes the recommendation to the Secretary of the Air Force (the defendant herein), who finally decides whether to disenroll a cadet.

After reviewing *de novo* all the charges against plaintiff, the H.O. found that plaintiff had cheated on the Physics quiz, submitted two plagiarized papers, engaged in conduct unbecoming an Air Force officer candidate at the Dining-Out, violated a direct order by Major Garvey, and acted disrespectfully toward him. The H.O. also found that plaintiff had not committed several other conduct violations with which he had been charged.

Plaintiff's case was reviewed as required by Regulation 53–3, and on April 18, 1985 plaintiff was disenrolled from the Academy and honorably discharged from the Air Force. This action was commenced on April 19, 1985. On April 22, 1985 this Court issued a Temporary Restraining Order directing defendant to reinstate plaintiff as a cadet for the limited purpose of allowing plaintiff to complete his classes and prepare for exams.

## Discussion

■ To obtain an injunction in this Circuit, a moving party must demonstrate irreparable harm and either: 1) a likelihood of success on the merits; or 2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir.1979).

### 1. Irreparable Harm

■ Defendant suggests that disenrolling plaintiff from the Academy just prior to his examinations and graduation does not constitute irreparable harm. In support of this argument defendant relies on several holdings to that effect from other Circuits. *See Dougherty v. Hidalgo*, 539 F.Supp. 4 (E.D.Pa.1981); *aff'd on other grounds*, 688 F.2d 158 (3d Cir.1982); *Love v. Hidalgo*, 508 F.Supp. 177 (D.Md.1981). I cannot agree with those holdings.

The question presented has not been squarely addressed by this Circuit. In *Phillips v. Marsh*, 687 F.2d 620 (2d Cir. 1982), however, the Court declined to disturb the District Court's ruling that interruption of plaintiff's class work would create irreparable harm. The District Court had held that "[t]he loss of time, military seniority, education and status involved in a dismissal from the Academy cannot be adequately compensated at law." *Id.* at 622.

The District Court's reasoning in *Phillips* has considerably more appeal than do the cases relied upon by defendant. The Academy seeks both to educate students and to train cadets as future officers and leaders of the Air Force. It creates an elite cadre of Air Force officers who will be expected, should the need arise, to assume positions of great authority and responsibility.

If plaintiff's motion is denied, defendant's order of disenrollment will be reinstated. Should this Court subsequently determine that plaintiff is entitled to be reinstated as a cadet, he will be forced at that time either to take make-up exams or to

repeat some of his courses. Whichever occurs, plaintiff will be delayed in both his graduation and commissioning as an officer. The loss of status involved, including the indelible stigma of having once been disenrolled, cannot help but have a deleterious effect on plaintiff's future as an Air Force Officer. Such harm cannot be adequately compensated at law.

### 2. Likelihood of Success on the Merits

■ Plaintiff suggests that serious violations of his procedural and substantive due process rights were committed during his numerous disciplinary proceedings. The Academy is, of course, subject to the requirements of due process in its disciplining of cadets. *Lightsey v. King*, 567 F.Supp. 645, 648 (E.D.N.Y.1983). Nevertheless, as the Court stated in *Wasson v. Trowbridge*, 382 F.2d 807 (2d Cir.1967):

> Few decisions properly rest so exclusively within the discretion of the appropriate government officials than the selection, training, discipline and dismissal of the future officers of the military and Merchant Marine. Instilling and maintaining discipline and morale in these young men who will be required to bear weighty responsibility in the face of adversity—at times extreme—is a matter of substantial national importance scarcely within the competence of the judiciary. And it cannot be doubted that because of these factors historically the military has been permitted greater freedom to fashion its disciplinary procedures than the civilian authorities.

*Id.* at 812.

Having reviewed the entire record in this matter, I am satisfied plaintiff has not shown a bare possibility of success, let alone a likelihood. The record discloses no constitutional or statutory infirmities regarding the Honor Board, the CDBs, or any disciplinary action taken against him prior to the initiation of Hearing Officer review.

■ To the extent plaintiff complains of manipulation of the Honor Board system or CDBs to increase the likelihood and/or severity of his punishment, the record disclos-es two material facts. First, Honor Boards were abolished in June, 1984 for all cadets. All pending cases, not just plaintiff's, were referred to CDBs. (Declaration of Michael Oonk, Director of Honor and Ethics, U.S. Air Force Academy). Second, when the Academy considers a cadet for disenrollment, his entire conduct record is reviewed, not just that of the most recent six months. (Declaration of Major John Ottino, Chief, Cadet Wing Policy Division, United States Air Force; Regulation 53–3, § E). Plaintiff's claim that Academy officials manipulated the timing of his punishments, even if accepted, is thus immaterial.

■ Plaintiff also suggests constitutional violations at the Hearing Officer review. He claims that, in violation of paragraph 30(a)(3) of Regulation 53–3, he was not notified prior to his hearing of the identities of two witnesses who were called against him, Captains Cope and McClure. While it is true plaintiff was not given their names, plaintiff was given the names of 17 other proposed witnesses. The testimony of Captains Cope and McClure was quite brief, and the failure to give plaintiff their names prior to the hearing does not create a likelihood of success on the merits.

■ Exclusive of the procedural irregularity discussed above, plaintiff at the H.O. review received all the process due him under the Constitution. He was afforded the opportunity to present evidence and cross-examine witnesses, and to consult with counsel outside the hearing. The Academy is required to do no more. *Rustad v. United States Air Force*, 718 F.2d 348, 350 (10th Cir.1983); *Hagopian v. Knowlton*, 470 F.2d 201, 211 (2d Cir.1972); *Wasson v. Trowbridge, supra*, 382 F.2d at 812.

I have considered all of plaintiff's remaining claims; none exist on which plaintiff is likely to prevail.

### 3. Serious Questions Going to the Merits

■ My conclusion that plaintiff has almost no chance of success on the merits compels a finding that plaintiff has not raised sufficiently serious questions going

to the merits to make them a fair ground for litigation. The record does disclose that plaintiff and his superior officer, Major Garvey, unfortunately had an antagonistic relationship. Nevertheless, there is no evidence suggesting that because of this relationship plaintiff is any the less guilty of the charges against him. Nor is there evidence that the disciplinary proceedings against plaintiff were tainted by this relationship. Plaintiff has raised no serious questions going to the merits to justify issuance of a preliminary injunction.

### 4. Balance of Hardships

■ Absent serious questions going to the merits, no consideration of the balance of hardships is required. Nevertheless, I note that given the limited relief presently sought by plaintiff, and the irreparable harm discussed above, the balance of hardships in this case would tip decidedly in plaintiff's favor. *See Hagopian v. Knowlton, supra,* 470 F.2d at 207.

For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied. The Temporary Restraining Order issued by this Court is vacated.

Plaintiff, notified by the Court of this decision, orally requested a stay of this Order pending appeal. The request is denied, without prejudice to renewal in the Court of Appeals.

Should this action proceed further, the Court intends to treat defendant's cross-motion to dismiss, Fed.R.Civ.P. 12(b)(1), (6), as one for summary judgment. Fed.R. Civ.P. 56. Plaintiff shall serve and file his papers in opposition to the cross-motion not later than May 20, 1985.

SO ORDERED.