Leonard P. MATLOVICH, Appellant,

v.

SECRETARY OF The AIR FORCE and
Colonel Alton J. Thogersen, Appellees.

No. 76–2110.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 15, 1978.

Decided Dec. 6, 1978.

E. Carrington Boggan, New York City, for appellant.

Vincent B. Terlep, Jr., Atty., Civ. Div., Dept. of Justice, Washington, D. C.; with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., and Ronald Glancz, Atty., Civ. Div., Dept. of Justice, Washington, D. C., were on the brief, for appellees.

Before WRIGHT, Chief Judge, ROBIN-SON, Circuit Judge, and DAVIS, Judge, United States Court of Claims.*

Opinion for the court filed by Judge DA-VIS.

DAVIS, Judge:

In March 1975, appellant Leonard P. Matlovich, after some twelve years of excellent service in the military, wrote to the Secretary of the Air Force, through his commanding officers, that he had concluded that his "sexual preferences are homosexual as opposed to heterosexual." He added that in his view his sexual preferences would in no way interfere with his Air Force duties and that he considered himself fully qualified for further military service. He asked that the provision in AFM 39–12 (Change 4) Oct. 21, 1970, para. 2–103, relating to the discharge of homosexuals be waived in his case.[1] At that time Matlovich was a Technical Sergeant assigned to the

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

1. This regulation provided for a general policy of discharging Air Force members determined to have performed homosexual acts. Excep-tions to the policy were contemplated if "the most unusual circumstances exist and provided the airman's ability to perform military service has not been compromised."

4510th Support Squadron, Tactical Air Command, Langley Air Force Base, Virginia. His letter triggered an investigation by the Air Force Office of Special Investigation during which appellant provided information concerning his homosexual experiences since 1973; he stated that these were all consensual and occurred in private, while he was off-duty and off-base, with males over twenty-one. He also said that he had had such relations with two other members of the Air Force (one of whom had been discharged by that time), neither of whom had worked for him (he added that "as any responsible NCO [non-commissioned officer] I would always refrain from such a relationship").

As a result of the investigation, involuntary administrative discharge proceedings were begun against Matlovich on the ground of his homosexual activity. An Administrative Discharge Board met in September 1975 and held a four-day hearing at which appellant was represented by counsel. In addition to general testimony on homosexuality, appellant presented evidence on his own service in the Air Force and his ability to continue to give effective service. It was stipulated that he had committed homosexual acts during his current enlistment period. The Board so found and recommended that he be given a general discharge for unfitness, based on his homosexual acts.

Matlovich's commanding officer at Langley Air Force Base[2] accepted the Board's recommendation of discharge but determined that the discharge should be honorable. The Secretary of the Air Force then declined to waive the provisions of AFM 39–12, *supra*, and directed that the honorable discharge be executed. This was done on October 22, 1975.[3]

Appellant immediately applied to the Air Force Board for the Correction of Military Records (AFBCMR) to overturn his discharge and also amended his complaint below (*see* note 3) to seek reinstatement, as well as a declaratory judgment that the discharge was invalid. The AFBCMR refused to correct appellant's records and the Secretary of the Air Force adopted that tribunal's findings and recommendations.

Thereafter both sides filed motions for summary judgment in the court below. It was stipulated, among other things, that the Air Force had in the past retained Air Force members on active duty who had engaged in homosexual activity.

After argument, Judge Gesell granted appellees' motion for summary judgment in an oral opinion. He held, first, that there is no constitutional right to engage in homosexual activity; second, that under the standards he deemed to govern judicial review of military determinations there is a rational basis for the Air Force policy of separating airmen found to have engaged in homosexual conduct; and, third, that appellant had not proved that an exception had to be made in his case. At the same time the judge recognized the superior quality of Matlovich's service[4] and ex-

---

**2.** This was Colonel Alton J. Thogersen, the second of the two appellees.

**3.** On the day before, October 21st, appellant filed the present action seeking to enjoin the discharge as invalid and for a declaratory judgment to that effect. A temporary restraining order was denied by the District Court and the discharge was then effected.

**4.** In his oral opinion, Judge Gesell said of Matlovich:

"He has had a most commendable, highly useful service in the military over a long period of time, starting with the Air Force in 1963. The record fully discloses his qualifications and need only be briefly mentioned by the Court for purposes of this decision.

"Here is a man who volunteered for assignment to Viet Nam, who served in Viet Nam with distinction, who was awarded the Bronze Star while only an Airman First Class, engaged in hazardous duty on a volunteer basis on more than one occasion, wounded in a mine explosion, revolunteered, has excelled in the Service as a training officer, as a counselling officer and in the various social action programs and race-relation programs of the military, and has at all times been rated at the highest possible ratings by his superiors in all aspects of his performance, receiving in addition to the Bronze Star, the Purple Heart, two Air Force Commendation Medals and a Meritorious Service Medal."

pressed his personal view that "it would appear that the Armed Forces might well be advised to move toward a more discriminatory and informed approach" to the problem of homosexuality—"to approach it in perhaps a more sensitive and precise way."

## I

On this appeal from the District Court's award of judgment to the appellees, the parties first present to us the basic issue of whether private consensual homosexual activities between adults is protected by the Constitution. The Government urges that that question has been settled negatively by *Doe v. Commonwealth's Attorney,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), summarily affirming 403 F.Supp. 1199 (E.D. Va.1975); that ruling, though summary, is said to be binding on us under the rule of *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Appellant's response is that, after *Doe,* the Supreme Court indicated that the issue was still open. *See Carey v. Population Services Int'l,* 431 U.S. 678, 688 n.5, 594 n.17, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).[5] Appellees' riposte is that the reference in *Carey* to private consensual sexual behavior was confined by its context though not in terms to heterosexual conduct. Appellant insists, in turn, that the Court meant everything it said.

## II

We do not reach these questions because a narrower problem looming before us requires remand of this case to the Air Force, and after further action by that Service renewed consideration by the District Court. The Air Force regulation expressly contemplates that exceptions can be made to the general policy of separating homosexuals (*see* note 1, *supra* ), and the record shows that the Air Force has in the past retained members on active duty who had engaged in homosexual activity. With respect to Matlovich the Air Force said that it had considered whether to make an exception in his case but had decided against it. But what disturbs us is that it is impossible to tell on what grounds the Service refused to make an exception or how it distinguished this case from the ones in which homosexuals have been retained. The regulation (AFM 39–12, para. 2–103) gives only the most general of guidance when it limits exceptions to those "where the most unusual circumstances exist and provided that the airman's ability to perform military service has not been compromised." Also, "an exception is not warranted *simply* because the airman has extensive service" (emphasis added) or because of intoxication. No other pertinent standards are laid down.[6]

In this instance the Administrative Discharge Board was given by its Legal Advisor only the most general of instructions on this point. After paraphrasing the exception provision of the regulation, the Legal Advisor said: "What constitutes most unusual circumstances cannot be defined with any great degree of precision. It must be based upon your experience with human nature, your understanding of the orderly conduct of the affairs of man, the very nature of the military environment as a separate and distinct segment of society with the full knowledge that military members are governed by a more strict set of rules of conduct and standards than is required and expected of the general public. The same rules apply to your understanding of what constitutes compromise of a military member's ability to perform military service. You must consider all these factors that have been legally presented to you during this hearing." No more light is shed by the Administrative Discharge Board's conclusory finding, without any real explanation, that no exception should be made.

---

**5.** The Court said there that it had "not definitely answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults"—and that it did not purport to answer that question in *Carey.*

**6.** In addition there are somewhat more specific criteria for cases involving participation in homosexual acts prior to entry into the Air Force, AFM 39–12, para. 2–103(d), but those are not applicable to Sgt. Matlovich whose homosexual activity occurred after entry.

The Correction Board is similarly unrevealing. It recognized that Matlovich had had an "outstanding" record but it then concluded summarily—without saying what was lacking—that that was not enough. The board went so far as to say that even if unusual circumstances existed that would not require retention; the existence of unusual circumstances "merely permits the retention if the service considers such action appropriate." Obviously, the board did not consider such action "appropriate" here but it gives no hint why it would not be appropriate to retain appellant. The board merely concludes "that an outstanding military record without other unusual circumstances is not sufficient basis to compel a member's retention"—and that the discharge board and the Secretary acted fairly.

In confirming the Correction Board's determination, the Secretary of the Air Force likewise said that an outstanding record was not enough and found no other "unusual circumstances"—but, again, he gave no hint (aside from a reference to instances involving intoxication, young airmen, and undue influence of a superior) what "unusual circumstances" there could be or what was missing in Matlovich's case.

What we have, then, is a serviceman with an admittedly outstanding record of considerable duration,[7] with minimal sexual involvement with Air Force personnel and none with those with whom he worked and with substantial testimony that the Air Force community would be able to accept his homosexuality. Neither the Correction Board nor the Secretary (in confirming that board) suggested that his ability to perform military service had been compromised, and we do not understand the Administrative Discharge Board to have made such a finding either. What is missing, the Air Force says, are the "unusual circumstances" which have to exist to warrant retention even if the other conditions are satisfied. But what are "unusual circumstances," or what they have been in past cases, is left uncertain and unknown.[8]

We are at sea as to the circumstances—aside from the exception for youths—in which the Air Force makes exceptions to its policy of eliminating homosexuals and when it refuses to make an exception. The absence of articulated standards, policies, or considerations—plus the absence of any reasoned explanation in this particular case—makes it impossible to decide whether or not there has been an abuse of discretion in this instance or whether improper factors have played a material role. We suppose that everyone would admit that the Air Force could not decide, under its all-inclusive but unarticulated rubric, to retain only black homosexuals or only white ones, or homosexuals of one religion but not of others, or homosexuals of one ethnic background but not of others, or only homosexuals who were proteges of senior officers. We do not suppose that such blatantly improper distinctions entered into the decision in this case, but the almost-total lack of specificity in the Air Force's determinations leads one to consider the possibility, for instance, whether Matlovich's failure of retention may have been affected by his "going public" with his homosexuality and the publicity surrounding his case, and that if his homosexuality had been discovered and handled by the Air Force, without public notice, the result might have been different.[9] If that factor entered into the refusal

7. The record before us contains nothing to the contrary. Judge Gesell's evaluation of appellant's service is quoted *supra*, at note 4.

8. We do not understand the Secretary's reference (in confirming the Correction Board) to "youthful curiosity, intoxication, or undue influence of a person senior in years or grade" as exhausting the list of "unusual circumstances" even for past cases; the Secretary goes on to say summarily that he found no "*other* unusual circumstances" warranting an exception in Matlovich's case (emphasis added).

9. The Air Force has agreed that it does not have an active program to identify and discharge homosexuals; the discharges only occur when homosexuals come to the official attention of the Air Force. Moreover, the Air Force stipulated that it does not seek to suppress heterosexual activity which is technically in violation of the Uniform Code of Military Justice or state laws.

to retain, both appellant and the reviewing court are entitled to know it—so that appellant can challenge the propriety of reliance on that consideration and, if he does, the court can pass upon that contention.

■ We do not say at this stage, because we do not know, that the Air Force cannot justify appellant's discharge.[10] What we say is that the Air Force should explicate more fully its reasons for refusing to retain appellant—as its regulation provides that it may do and its practice shows that it has done in other cases—so that the court can decide if it was arbitrary, capricious, or unlawful in exercising its discretion whether or not to retain Matlovich.

### III

■ The normal rule where a discretionary administrative decision is to be reviewed by a court (other than on a *de novo* basis) is that the agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review (and the applicant for relief can challenge it). This basic concept has been reiterated time and again—in differing formulations and contexts but always centering on the need for the court, and the complaining party, to be given some helpful insight into the agency's reasoning. *See, e. g., United States v. Chicago, M., St. P. & P. R.R.,* 294 U.S. 499, 510–11, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935) ("We must know what a decision means before the duty becomes ours to say whether it is right or wrong"); *SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action * * * "); *Baltimore & Ohio R.R. v. Aberdeen & Rockfish R.R.,* 393 U.S. 87, 92,

89 S.Ct. 280, 21 L.Ed.2d 219 (1968); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Dunlop v. Backowski,* 421 U.S. 560, 571–72, 573–74, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Kleppe v. Delta Mining, Inc.,* 423 U.S. 403, 409, 96 S.Ct. 816, 46 L.Ed.2d 591 (1976); *Environmental Defense Fund, Inc. v. Ruckelshaus,* 142 U.S.App.D.C. 74, 86, 88, 439 F.2d 584, 596, 598 (1971); *Greater Boston Television Corp. v. F.C.C.,* 143 U.S.App.D.C. 383, 393, 444 F.2d 841, 851 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); *Standard Rate & Data Service, Inc. v. United States Postal Service,* 189 U.S.App.D.C. 315 at 324, 584 F.2d 473 at 482; *Public Media Center v. F.C.C.,* 190 U.S.App.D.C. 425 at 434–435, 587 F.2d 1322 at 1331–1332 (1978).[11]

■ The fundamental principle of reasoned explanation embodied in these (and comparable) decisions serves at least three interrelated purposes: enabling the court to give proper review to the administrative determination; helping to keep the administrative agency within proper authority and discretion, as well as helping to avoid and prevent arbitrary, discriminatory, and irrational action by the agency; and informing the aggrieved person of the grounds of the administrative action so that he can plan his course of action (including the seeking of judicial review).

■ We know of no reason why this umbrella principle should be inapplicable to the Air Force's decision not to retain appellant—as its regulation expressly contemplated that it could do. The explicit provision for exceptions to the overall policy of separating homosexuals is binding on the

10. Of course, this assumes, without deciding, that it is generally constitutional to separate servicemen who engage in private consensual homosexual conduct with adults, off-duty and off-base.

11. In the same general class are those rulings invalidating administrative action because the agency had no articulated standards governing its discretionary determinations, or requiring the adoption of such standards. *See Hornsby v. Allen,* 326 F.2d 605, 610, 612 (5th Cir.), *rehearing denied,* 330 F.2d 55 (1964); *Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir. 1968); *White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir. 1976).

Air Force, *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Roberts v. Vance*, 119 U.S.App.D.C. 367, 370, 343 F.2d 236, 239 (1964), just as much as the general directive calling for discharge of homosexuals. And the procedure established for processing these contested cases shows that the Service was expected to support its determinations of separation by some reasoned explanation.

The general Defense Department Regulations on enlisted administrative separations of all types—applicable to each of the armed services—describes an administrative discharge board (such as acted in this case) as "appointed to render findings based on *facts obtaining, or believed to obtain, in a* case and to recommend retention in the Service or discharge, with reason for and the type of separation or discharge certificate to be furnished." 32 C.F.R. § 41.3(h) (1976). The enlisted man entitled to or granted such a board can have counsel and present available witnesses (through oral testimony or by deposition). 32 C.F.R. § 41.5(c).[12] The board record shall be as prescribed by the Secretary of the particular Military Department but, "as a minimum, shall contain a verbatim record of the findings and recommendations"; if the board recommends discharge, it shall be "for a specified reason." 32 C.F.R. § 41.-5(b). At the next level—that of the discharge authority (here, the commanding officer at Langley Air Force Base)—the regulations seem to preclude that officer from acting less favorably to the serviceman than the board recommended without indicating his reasons for the more severe treatment (*see* 32 C.F.R. § 41.5(d)); for instance, where the board recommends retention, the discharge authority may recommend separation to the Secretary "if he believes that separation is warranted by the circumstances of the particular case." 32 C.F.R. § 41.5(d)(6).[13]

[■] The same assumption that a reasoned explanation should exist and be given permeates the provisions on discharges for unsuitability and misconduct. The former prefaces its listing of specific grounds of unsuitability (including "homosexual or other aberrant sexual tendencies") with the general requirements that the type of discharge shall be "as warranted by the member's military record" and separation should be directed "when it has been determined that an individual is unsuitable for further military service." 32 C.F.R. § 41.7(g). Similarly, determination of the type of misconduct separation calls for appraisal of "the particular circumstances in a given case" and separation for specific types of misconduct (including "sexual perversion * * * homosexual acts") follow "when it has been determined that an individual is unqualified for further military service." 32 C.F.R. § 41.7(i).

These Defense Department directives are implemented and pointed up by Air Force regulations—including those contained in the portion of the Air Force Manual governing separation of enlisted personnel for unsuitability, unfitness or misconduct—which consistently stress the need for reasoned explanations and determinations in these circumstances. The letter of notification to the airman should give "specific reasons for the proposed discharge" which shall include an "itemization of the factual details which constitute recommendation for the allegations of unsuitability, unfitness or misconduct upon which recommendation for elimination is based." AFM 39-12, paras. 2–18(a)(3), 2–60(a)(3), 1–25(c)(2), 2–9(a)(3), 1–25(a)(2). The administrative discharge board is primarily a "fact-finding and recommending board." Its obligation is to "develop and review all information concerning the matter under consideration

---

12. Under 32 C.F.R. § 41.11(d)(2) and (e)(1), appellant, as a member with 8 or more years of total active military service, was entitled to an administrative discharge board (if he wished one) before being discharged for unsuitability.

13. Also, the discharge authority may change the basis of a board-recommended discharge "when the record indicates such action would be appropriate, except that he shall not designate misconduct as the basis [of discharge] when the board has recommended discharge for unsuitability," 32 C.F.R. § 41.5(d)(3).

to arrive at clear logical findings of fact as to each allegation in the letter of notification and to recommend, on the basis of the findings, what action should be taken in the case." AFM 39–12, para. 3–1; *see also* para. 2–18. These boards are also instructed (AFM 39–12, para. 3–6a) to follow the procedures in Air Force Regulations (AFR) 11–1 ("Administrative Practices: Boards of Officers for Conducting Investigations"). With respect to findings, AFR 11–1, para. 13, declares that the findings "will be the substance of the facts material to the issue as established by the evidence," and such finding must be supported by evidence of record and "[a] finding should be made on each point in question before the board." Recommendations are to be "appropriate to and consistent with the findings as well as consonant with applicable laws, regulations, policies and customs of the service, with due consideration for the best interests of the Government and the person concerned." AFR 11–1, para. 14.[14] To us, this is the clear equivalent of an explicit requirement for a statement of reasons.

Following the board proceedings, the convening authority gives his recommendation and forwards the complete file to the discharge authority. If the former disagrees with the board he must give his "reasons therefor." AFM 39–12, para. 1–31a. As for the discharge authority, the Air Force directives make it plain that he can agree with the board without making his own independent findings but that he cannot himself depart from the board to the detriment of the airman; if he thinks more severe action is warranted, or if he thinks higher authority should consider the matter

in any case, he can forward the case "with his recommendation and reasons therefor" for Secretarial decision. AFM 39–12 (Change 6) May 12, 1972, at 29, Table 2–B–1, n.1.[15]

■ In the light of these Defense Department and Air Force directives, we cannot escape the conclusion that the military has itself provided that in cases of this type a reasoned explanation should be made for any detrimental action ordered. The whole system of regulations is infused with this concept.[16] And since the Air Force regulation on homosexuality (AFM 39–12, para. 2–103) expressly contemplates that retention in the service is an alternative in proper cases, the procedural regulations we have just summarized demand some reasoned explanation why that alternative is rejected in the case at hand. The history of this matter within the Air Force shows that it considered itself bound to give such reasons because it purported to do so, all along the line. The problem, as we have pointed out, is that no such reasoned explanation was given in a form which is intelligible to this court or permits any meaningful judicial review.

■ It is established, of course, that the federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations. *See, e. g., Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *Van Bourg v. Nitze,* 128 U.S.App.D.C. 301, 307, 388 F.2d 557, 563 (1967); *Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir. 1974). In con-

14. AFR 11–1, para. 3, also declares:

"The primary function of a board is to ascertain and report facts so that the appointing authority may have adequate information on which to base his decision. The primary duty of a board is to develop and consider the evidence concerning the matter under investigation, to arrive at clear, consistent findings and, where required, to make recommendations."

15. It is significant, too, that, where the airman has waived a board hearing and the discharge authority directs a discharge inferior to the type recommended by the initiating command-

er "he [the discharge authority] will prepare and file in the case a detailed statement of the reasons for his decision." AFM 39–12 (Change 6) May 12, 1972, at 29, Table 2–B–1, n.3.

16. Since Matlovich also had a hearing by the Air Force Board for the Correction of Military Records, it is pertinent to add that that tribunal was likewise expected to give its reasons—and that it purported to do so. *See* AFR 31–3, para. 17. *Cf.* the stipulation of dismissal entered in *Urban Law Institute of Antioch College v. Secretary of Defense,* Civil Action No. 76–530 (D.D.C. Jan. 31, 1977).

nection with such review the court can and should enforce a regulatory requirement for a meaningful explanation of the administrative determination. *Van Bourg v. Nitze, supra,* was such a case. 128 U.S.App.D.C. at 309, 388 F.2d at 565. So were *Olenick v. Brucker,* 107 U.S.App.D.C. 5, 273 F.2d 819 (1959), and *Davis v. Brucker,* 107 U.S.App. D.C. 152, 275 F.2d 181 (1960).[17] A parallel line-of-decisions involves an application for discharge from service as a conscientious objector; the regulations controlling those requests required a statement of reasons for an adverse decision. This directive has been judicially recognized and enforced. Perhaps the leading decision is Judge Leventhal's opinion for the Second Circuit in *United States ex rel. Checkman v. Laird,* 469 F.2d 773, 779–83, 787 (2d Cir. 1972). As that discussion pointed out, (i) "where the range of executive responsibility embraces the latitude to find in favor of the claimant on an issue, the matter must be considered, and if the conclusion is adverse, reasons must be stated, with support in a record basis in fact" (469 F.2d at 781); (ii) "the proper focus of a reviewing court is on the reasons given by the [board] and not on reasons that may come to light if and when a court rummages throughout the record in an effort to reconstruct on what basis the board might have decided the matter" (469 F.2d at 783); and (iii) the regulatory requirement for reasons "is a meaningful requirement, and one that cannot meaning-

fully be satisfied by a bare recitation * * of the ultimate statutory [regulatory] criteria * * * " (469 F.2d at 787).[18]

■■■■ Appellees seem to suggest that, in the nature of things, these principles cannot be used for the retention exception at issue here—that it is impossible for the service to specify "where the most unusual circumstances exist" and what constitutes a compromise of the airman's "ability to perform military service." We cannot accept such a contention. This problem is no more difficult than that presented in the conscientious objector cases,[19] and there is no valid reason why a statement cannot be given which will show the reviewing court that improper considerations were not taken into account, that the particular airman was not treated differently from others in the same position, and that there is a rational basis for the refusal to retain this serviceman. The mere conclusion, tracking the terms of the regulation, that sufficient "unusual circumstances" do not exist in the particular case is inadequate compliance with the reasons requirement. *See United States ex rel. Checkman v. Laird, supra.* Undoubtedly the Air Force was much more specific and precise in its thinking when it passed upon Sgt. Matlovich's case—and there is no good ground why he and the court should be screened off from that reasoning.[20] That is true whatever the scope

17. The *Davis* court said (107 U.S.App.D.C. at 153, 275 F.2d at 182): "We cannot say that the basis of the [Army's] action clearly appears. It is certainly not clear to us that [the Army] acted solely on the basis of [the soldier's] military record, and not on his pre-induction conduct" [*i. e.,* a course forbidden by *Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958)].

*Mutatis mutandis,* precisely those words can be used in the present case. We are not and cannot be clear that improper or unequal considerations did not enter into the decision against retaining this appellant.

18. *See also Sanger v. Seamans,* 507 F.2d 814, 817 (9th Cir. 1974):

"This requirement [of reasons] is dictated by basic considerations of fairness: The in-service applicant [for release because of conscientious objections] should know the reasons for the denial of his application so that he

may be able effectively to seek judicial relief. [citation omitted] Moreover, the reviewing court must know the reasons for the adverse decision in order adequately to review the Secretary's decision within the narrow scope permitted."

19. The Civil Service Commission has, relatively recently, issued new regulations setting forth (at least in part) more specific criteria for retention or discharge of homosexuals in the Civil Service. *See* Memorandum for the Respondents, at 6, *Singer v. United States Civil Service Comm'n,* 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977).

20. Appellees' brief states (at 28) that the exception policy was designed to benefit the military, not the servicemen, and then goes on to say that the discretionary determination involves a weighing of the need of the service for the specific attributes and talents of the particular

of judicial review of the service's exercise of its discretion, a separate issue which we do not now touch.

There are two means by which an administrative entity can develop standards for rational action in an area of formal or informal adjudication. The first is by advance promulgation of written rules, directives or formulated criteria; the other is through case-by-case decision making. *See Environmental Defense Fund, Inc. v. Ruckelshaus*, 142 U.S.App.D.C. 74, 86, 88, 439 F.2d 584, 596, 598 (1971); *Standard Rate and Data Service, Inc. v. United States Postal Service*, 189 U.S.App.D.C. 315, 584 F.2d 473 (1978) (concurring opinion of Judge Leventhal). There are advantages to the former method—in Judge Leventhal's words, *supra*, "rulemaking assures that any modification in position will represent a generalized approach to a general problem, avoiding the uneasiness that results from the greater possibility of discrimination in a case-by-case approach"—but, as in *Environmental Defense Fund, Inc. and Standard Rate & Data Service, Inc., supra*, we leave to the Air Force the choice of the path it will pursue to clarify its policy on retention of homosexuals and the application of those standards to this case. In either event, the Secretary of the Air Force may do so through such permissible means as he considers appropriate.

Accordingly, the decision granting summary judgment to the Government is vacated and remanded with instructions to remand to the Air Force for further proceedings consistent with this opinion. Appellant can of course seek judicial relief from any adverse determination made on this remand.

*Vacated and remanded.*

airman "and the affect [sic] on the military of the loss of the services of that individual, against the actual or probably [sic] detriment that retention of the individual would have upon the military in general, and the effectiveness of the serviceman in particular."

We find neither of these statements in any of the Air Force's determinations in this case—and it is understood by now that counsel's post hoc rationalizations cannot substitute for the

agency's own failure. *Van Bourg v. Nitze, supra*, 128 U.S.App.D.C. at 309, 388 F.2d at 565; *Standard Rate & Data Service, Inc. v. United States Postal Service, supra*, 189 U.S.App.D.C. at 323, 584 F.2d at 481. Moreover, even if the general standard outlined by counsel were adopted by the service, we would expect some more specific spelling out of the reasons why the balance went against Sgt. Matlovich.