Joseph J. MAHONEY, Plaintiff,

v.

The UNITED STATES of America and the Secretary of the Navy, Defendants.

No. 83 Civ. 3869 (JES).

United States District Court, S.D. New York.

June 14, 1985.

Lester Lichter, White Plains, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Frederick M. Lawrence, Asst. U.S. Atty., Mark S. Pearlstein, LT., JAGC, USNR, Office of the Judge Advocate Gen., Litigation Div., Alexandria, Va., of counsel.

SPRIZZO, District Judge:

OPINION & ORDER

FACTS

This is an action for correction of military records brought pursuant to 10 U.S.C. § 1552 (1982). Plaintiff Joseph J. Mahoney served in the United States Marine Corps from October 6, 1953 until May 24, 1956. Mahoney received a bad conduct discharge as a result of a general court-martial ("GCM") conviction on March 10, 1955. The GCM found Mahoney guilty on two specifications of desertion and one count of failure to obey a lawful order.[1]

---

1. The specifications upon which Mahoney was tried were presented as follows:

Charge I: Violation of the Uniform Code of Military Justice, Article 85.

*Specification 1:* In that Joseph J. Mahoney, private first class, U.S. Marine Corps, Marine Barracks, U.S. Naval Base, New York, Brooklyn, New York, did, at or about 0600 hours, on or about 7 June 1954, without proper authority and with intent to remain away there-

from permanently, absent himself from his organization, to wit: Baker Company, Schools Demonstration Troops, Marine Corps Schools, located at Quantico, Virginia, and did remain so absent in desertion until he was apprehended by civil authorities at or about 2230 hours, on or about 31 July 1954, and was subsequently delivered at or about 2300 hours, on or about 31 July 1954.

The evidence before the GCM was as follows. Mahoney, without authorization, twice departed from his duty station at Quantico, Virginia, and remained away from his duty station for protracted periods of time, 54 and 142 days respectively. Each absence was terminated by Mahoney's arrest (in Yonkers, New York), and each arrest took place far from Mahoney's duty station, but near to another duty station (Brooklyn, New York) to which Mahoney could have returned. During the periods of his absence from duty in 1954, Mahoney was found to be living with an unmarried civilian female in Yonkers, New York. At the time, this woman was pregnant with a child whom both plaintiff and she believed she had conceived with Mahoney in May of 1954. At his court-martial, both plaintiff and this woman testified that Mahoney had secured civilian employment during the period of his second prolonged absence from duty. *See* Ex. A to Defendant's Notice of Motion (certified copy of the complete record of Mahoney's court-martial) at 10, 37–41; *see also* Ex. B to Verified Complaint at 1.

At the time of plaintiff's conviction, authorized punishment for his offenses included dishonorable discharge, confinement for a period of up to six years, total forfeiture of pay, and reduction in pay to the lowest pay grade, E–1. *See* Exec.Order No. 10214, 3 C.F.R. 408 (1951), *reprinted in Manual for Courts-Martial, United States* (1951), at § 127c. Plaintiff received instead a bad conduct discharge, forfeiture of all pay and allowances for eighteen months, confinement for a period of eighteen months, and a reduction of pay grade to level E–1. *See* Verified Complaint at ¶ "Eighth"; Ex. A to Verified Complaint.

Mahoney's sentence by the GCM was approved by the Commandant Third Naval District (the convening authority) on March 24, 1955. *See* Ex. A to Defendants' Notice of Motion at 8–9, 56. In accordance with Article 66 of the Uniform Code of Military Justice, ch. 169, art. 66, 64 Stat. 107, 128–29 (1950) (current version at 10 U.S.C. § 866 (1982)), the conviction was reviewed and affirmed by the Navy Board of Review[2] on April 26, 1955. On August 8, 1955, plaintiff elected to waive an opportunity for restoration to duty. *See* Ex. B to Verified Complaint at 1. On May 24, 1956, Mahoney received a bad conduct discharge from the Marine Corps. *See id.*

On November 12, 1982, Mahoney applied to the Board for Correction of Naval Records ("BCNR") for corrective action with regard to his conviction and sentence. Specifically, Mahoney "applied ... for an Honorable Discharge and incidental relief for remission of the forfeitures." *See* Verified Complaint at ¶ "Ninth." On March 15, 1983, the BCNR met in executive session to consider Mahoney's application and denied the application on March 21, 1983. *See id.* at ¶ "Ninth"; *see also* Ex. B to Verified Complaint at 1.

On May 19, 1983, Mahoney filed the instant suit pursuant to 10 U.S.C. § 1552. Defendants United States of America ("USA") and Secretary of the Navy ("Sec-

---

*Specification 2:* In that Joseph J. Mahoney ... did, at or about 0056 hours, on or about 4 August 1954, without proper authority and with intent to remain away therefrom permanently, absent himself from his organization ... located at Quantico, Virginia, and did remain so absent in desertion until he was apprehended by civil authorities at or about 0030 hours, on or about 24 December 1954, and was subsequently delivered at or about 0200 hours, on or about 24 December 1954. Charge II: Violation of the Uniform Code of Military Justice, Article 92.
*Specification:* In that Joseph J. Mahoney ..., having knowledge of a lawful order issued by the Commanding Officer, Marine Barracks, U.S. Naval Base, New York, Brooklyn, New

York, to report to the Commanding Officer, Baker Company, Schools Demonstration Troops, Marine Corps Base, Quantico, Virginia, not later than 0055 hours, 4 August 1954, an order which it was his duty to obey, did, at Quantico, Virginia, at or about 0056 hours, on or about 4 August 1954, fail to obey the same. Mahoney entered a plea of "not guilty" to each of the specifications contained in Charge I and to Charge I, and a plea of "guilty" to the specification contained in Charge II and to Charge II. *See* Ex. A to Defendants' Notice of Motion.

**2.** The Navy Board of Review was the predecessor to the current U.S. Navy-Marine Corps Court of Military Review.

retary") have moved for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1), or alternatively for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Mahoney has cross-moved for summary judgment.

## DISCUSSION

The plaintiff contends that, upon the record of the GCM and upon his application to the BCNR, the action of the BCNR was "arbitrary, capricious, was not supported by substantial evidence, and was unconstitutional." *See* Verified Complaint at ¶ "Tenth." Plaintiff alleges:

> The Board acted on the basis of findings of fact not supported by evidence of record, in that there is no evidence to show intent on plaintiff's part to desert the service, the Board relying on length of absence and part-time janitorial work performed by the plaintiff, while disregarding much more cogent evidence that plaintiff considered his absences

temporary to alleviate a temporary situation.

> The Board also disregarded the complete absence of proof on the part of the government at the General Court-Martial of any intent to desert.

*See id.* at ¶ "Eleventh."

Defendants contend that plaintiff's claim is barred by the applicable statute of limitations and/or by the doctrine of laches. Defendants further contend that this Court does not have jurisdiction over the subject matter of this action,[3] and also move for summary judgment on the ground that the BCNR's decision should be upheld under the agency review standard of 5 U.S.C. § 706.

Defendants argue that the present action is governed by the six-year statute of limitations applicable to all actions commenced against the United States. *See* 28 U.S.C. § 2401(a) (1982). They contend that under 28 U.S.C. § 2401 a claim for illegal discharge from the armed forces accrues at the time of discharge; *see, e.g., Cowhig v.*

---

**3.** Counsel for plaintiff conceded at oral argument that this Court is without jurisdiction to directly review the findings of the GCM with respect to plaintiff's discharge. Such review may only be undertaken by an appropriate board of review, established by the Secretary of the Navy pursuant to 10 U.S.C. § 1553, and "[a] motion or request for review must be made within 15 years after the date of the discharge or dismissal." *See* 10 U.S.C. § 1553(a). No correction may be made by the BCNR unless the claimant files a request therefor before October 26, 1961, or within three years after he discovers the [alleged] error or injustice, whichever is later, unless the Correction Board, in the "interest of justice," excuses the failure to timely file. *See* 10 U.S.C. § 1552(b). Even if this Court were to have the power to directly review the GCM's decision, such review would clearly be time-barred under 28 U.S.C. § 2401(a). *See Miskill v. Lehman,* 566 F.Supp. 1486, 1489 (D.D. C.1983). However, since the BCNR did consider plaintiff's claims on the merits, the Court will assume that in the interest of justice, the BCNR implicitly excused the untimeliness of plaintiff's claim, which was filed with the BCNR well beyond the fifteenth anniversary of plaintiff's discharge. *See Kaiser v. Secretary of the Navy,* 525 F.Supp. 1226, 1230 (D.Colo.1981).

To the extent that the jurisdictional predicate for any of plaintiff's monetary claims is the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1982), those claims would be barred by the

applicable six-year statute of limitations. *See* 28 U.S.C. § 2401; *see also United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1357 (5th Cir.1972). However, to the extent that plaintiff seeks monetary relief in the form of military salary payments and the like which have remained forfeit due to the allegedly improper failure of the BCNR to correct his military records, this Court has jurisdiction to decide those claims. Section 1552(c) of Title 10 of the United States Code provides, in pertinent part:

> The department concerned may pay ... a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section the amount is found to be due the claimant on account of his ... service....

Congress clearly contemplated payment of money damages for successful claimants in corrective actions, as is reflected in the Senate report on the bill, adding the payment provision to 10 U.S.C. § 1552:

> The purpose of the proposed legislation, as amended, is to authorize the Secretaries ... to make certain payments which become due as a result of action taken by the respective Boards for the Correction of Records ...."

S.Rep. No. 923, 82d Cong., 1st Sess., *reprinted in* 1951 U.S.Code Cong. & Ad.Serv. 2469, 2469.

*Marsh,* 693 F.2d 234, 235 (1st Cir.1982), *cert. denied,* 460 U.S. 1092, 103 S.Ct. 1793, 76 L.Ed.2d 359 (1983); *Brewster v. Secretary of the Army,* 489 F.Supp. 85, 87 (E.D. N.Y.1980), and that plaintiff's claim thus accrued when he was discharged on May 24, 1956. However, the Court need not reach the merits of these limitations and laches arguments. Since the BCNR considered plaintiff's case on the merits, this Court will review the BCNR's determination under section 706 of the Administrative Procedure Act, 5 U.S.C. § 706.[4]

Counsel for all parties agree that the proper standard of review under 5 U.S.C. § 706 is whether the action of the BCNR, which denied plaintiff's claims for corrective and monetary relief, was arbitrary, capricious, or unsupported by the evidence. *See Miskill, supra* note 3, at 1489.

The Court finds that the decision of the BCNR was neither arbitrary, nor capricious, nor unsupported by the evidence presented to it. There was ample evidence which supported both the findings by the GCM and the punishment it imposed. That evidence established that plaintiff twice departed from his duty station, that both such absences were terminated by plaintiff's arrest, that each arrest occurred hundreds of miles from plaintiff's duty station, that each time he was arrested, plaintiff was found to be living with an unmarried civilian female who was pregnant with plaintiff's child, and that Mahoney had undertaken at least part-time employment during his absence from duty. *See* Ex. B to Verified Complaint. The inference of an intent to desert arising from that evidence was not only rational, but virtually compelling.

The BCNR also considered the fact that Mahoney disobeyed a lawful order and that he rejected an opportunity for reinstatement to duty, and concluded that insufficient evidence existed to substantiate plaintiff's allegation that a combination of a congenital brain malformation and stress contributed to his offenses. The BCNR also considered "all mitigating and equitable factors," including Mahoney's personal problems, youth and immaturity at the time of his offenses, his excellent post-service adjustment, and his otherwise unblemished military record. *See id.*

This evidence, which was and is not disputed by plaintiff, provides more than adequate support for the BCNR's decision.[5] In view of that evidence and of the Court's limited powers of review, the BCNR's decision to deny plaintiff's application for an upgraded discharge and incidental monetary relief must be upheld. *See Matlovich v. Secretary of the Air Force,* 591 F.2d 852, 857 (D.C.Cir.1978); *Miskill, supra.*

Defendants' motions to dismiss are denied. Defendants' motion for summary judgment dismissing the complaint is granted. Plaintiff's cross-motion for summary judgment is denied. The complaint in the above-captioned action is dismissed.

It is SO ORDERED.

---

**4.** Contrary to the impression created by defendants' papers, the issue of the applicability of time bars to actions for the correction of military records is not susceptible of easy resolution. *See Kaiser, supra* (and cases cited therein).

**5.** Given that Mahoney had served only eight months of his enlistment prior to his first lengthy departure from his duty station, from which point he was continually in a desertion or confinement status until his discharge, which he accepted instead of the offer for restoration to active duty status, *see* Ex. B to Verified Complaint, the BCNR's decision was hardly "arbitrary and capricious."