Michael S. COONEY, Plaintiff,

v.

John H. DALTON, Secretary of the Navy; Vice Admiral F.L. Bowman, Chief of Naval Personnel; Rear Admiral Gordon S. Holder, Commander Naval Base, Pearl Harbor; Captain Kraig Kennedy, Commanding Officer, Naval Station Pearl Harbor; Lieutenant Commander Rita L. Johnston; Ensign David K. Nuhfer; Engineman Senior Chief Loren C. Warner; and John Does 1–25, Defendants.

Civ. No. 95–00003 DAE.

United States District Court, D. Hawai'i.

Jan. 5, 1995.

Eric A. Seitz, Honolulu, HI, for plaintiff.

Thomas A. Helper, Asst. U.S. Attys. Office, Honolulu, HI, for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

DAVID ALAN EZRA, District Judge.

The court heard Plaintiff's motion on January 5, 1995. Eric Seitz, Esq., appeared on behalf of Plaintiff; Mark Helper, Esq., appeared on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Plaintiff's Motion for a Temporary Restraining Order.

## BACKGROUND

Plaintiff enlisted in the United States Navy in 1975 and has served for more than eighteen years. Until late 1993, he had received only exemplary performance evaluations. Plaintiff is currently a Boatswains Mate Chief ("BMC") and is assigned to duties at Pearl Harbor on a current enlistment that expires in 1998.

On November 19, 1993, following a random urine analysis, Plaintiff was charged with the use of cocaine. Plaintiff has never before tested positive for drugs. Plaintiff requested a special court-martial, which was conducted at Pearl Harbor Naval Base on March 7, 1994. At the conclusion of the evidence by the prosecution, the military judge ruled that the government had failed to produce any evidence that the cocaine in Plaintiff's urine constituted wrongful use of cocaine and found Plaintiff "not guilty."

The judge denied the prosecutor's request to reopen his case and present expert testimony on the meaning of the urinalysis. The judge stated that "[t]here is no evidence for me to conclude that the cocaine or its metabolite was not naturally produced by the accused's body or as a result of another substance consumed by him." See Commanding Officer Approval of Recommendation of Administrative Separation, attached as Exhibit D to Plaintiff's Motion for Temporary Restraining Order, at 2 (quoting military judge).

Plaintiff alleges that the prosecutor and certain members of the administrative board were angry that the judge had ruled for Plaintiff. On August 31, 1994, Plaintiff was directed to appear before an administrative discharge board. That board determined that the Plaintiff should be discharged under "other than honorable conditions" based on his wrongful use of cocaine.

At the administrative discharge proceedings, the board did not permit the Plaintiff to call a witness who had been present at the special court martial but had subsequently relocated to Australia. This witness did submit a sworn statement to the effect that, unbeknownst to Plaintiff, she had put cocaine in Plaintiff's drink. The board reviewed a statement by the prosecutor impeaching credibility of this witness' sworn statement. The board also heard evidence that Plaintiff, on the advice of counsel, had refused to take a polygraph test.

The board's recommendation to separate Plaintiff from the Navy under "other than honorable" conditions for "misconduct due to drug abuse" were reviewed and affirmed by the Navy chain of command through the Secretary of the Navy. Plaintiff is currently scheduled to be released from active duty and discharged from the Navy under "other than honorable" conditions on January 6, 1995. Plaintiff has not applied to the Board of Correction of Naval Records (BCNR).

Plaintiff alleges that he will lose all of his military retirement and other benefits. He also contends that the discharge will brand him as a drug user, severely prejudicing any attempt to find other employment.

## STANDARD OF REVIEW

■ Temporary restraining orders are issued to preserve the status quo and prevent irreparable harm. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974). The Ninth Circuit authorizes the court to issue a temporary restraining order if: (1) the motion raises serious questions on the merits; and (2) the balance of hardships tips sharply in the moving party's favor. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202 (9th Cir.1980). However, in the military context, the test for injunctive relief is much more stringent than the normal test for injunction. *Sebra v. Neville*, 801 F.2d 1135, 1139 (9th Cir.1986) (insufficient hardship shown).

## DISCUSSION

I. Serious Questions on the Merits

A. *Justiciability*

Only in certain extraordinary circumstances will a federal court intrude into military matters. "Federal courts restrict their review of military decision-making not because they lack jurisdictional power to hear

military disputes, but out of deference to the special function of the military in our constitutional structure and in the system of national defense." *Sebra v. Neville*, 801 F.2d at 1140.

■ However, military discharge decisions are subject to judicial review. *Muhammad v. Secretary of Army*, 770 F.2d 1494, 1495 (9th Cir.1985) (citing *Denton v. Secretary of the Air Force*, 483 F.2d 21, 24 (9th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); *Schlanger v. United States*, 586 F.2d 667, 671 (9th Cir.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979)).

Except in certain extraordinary circumstances, the Ninth Circuit requires exhaustion of an agency's remedies before it will review an administrative decision. *Muhammad*, 770 F.2d at 1495 (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938)). "Strict application of the exhaustion requirement in military discharge cases maintains the balance between military authority and the federal courts." *Id.* (citing *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980)).

Defendants contend that Plaintiff's failure to make an application to the Board for Correction of Naval Records (BCNR) renders this action unripe. The BCNR was established pursuant to the authority vested in the Secretary of the Navy under 10 U.S.C. § 1552. It is empowered to consider all applications before it requesting a correction of an error or injustice in the naval records of the individual named in the application. The BCNR is empowered to recommend reinstatement and back pay. *See* 32 C.F.R. § 723 *et seq.* In *Muhammad*, the Ninth Circuit noted the failure of the plaintiff to apply to the Army equivalent of the BCNR in finding that the plaintiff had failed to exhaust his administrative remedies. 770 F.2d at 1495. *See also Guitard v. U.S. Secretary of Navy*, 967 F.2d 737, 741 (2nd Cir.

1992) (the plaintiff's failure to make application to the BCNR meant that he had not exhausted his administrative remedies and the district court therefore should not have intervened by granting injunctive relief).

■ However, there are four circumstances in which exhaustion will not be required: (1) if the remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised. *Muhammad*, 770 F.2d at 1495 (citation omitted). As discussed below, the court finds that substantial constitutional questions have been raised concerning due process and double jeopardy. Moreover, the court also discusses below the irreparable harm the Plaintiff will suffer without review of the discharge.[1] Because the court makes these findings, it will not deny the motion based on a failure to exhaust remedies.

**B.** *Scope of Review*

"The federal courts do not sit to run the [Navy]." *Denton v. Secy. of the Air Force*, 483 F.2d 21, 24 (9th Cir.1973). The Navy "is entitled to discharge an officer on grounds rationally related to the standards of fitness for retention in that branch of the service." *Id.*

■ In *Johnson v. Orr*, 617 F.Supp. 170 (E.D.Cal.1985), *aff'd*, 787 F.2d 597 (9th Cir. 1986), the plaintiff moved for a preliminary injunction requiring the defendants to reinstate her. Citing to *benShalom v. Secretary of Army*, 489 F.Supp. 964, 971 (E.D.Wisc. 1980), the court described the tenor for review. "The courts are extremely reluctant to interfere with the military's exercise of direction over its internal affairs. This is particularly so when the military makes personnel changes, pursuant to its regulations, through its promotion or discharge processes." *Johnson v. Orr*, 617 F.Supp. at 172 (citing *Dilley v. Alexander*, 603 F.2d 914,

---

1. At oral argument, counsel for the Plaintiff also suggested that further appeal would be futile, given the Defendants' position and the fact that any BCNR action would take the form of a recommendation to the Secretary of the Navy.

The court cannot agree that these circumstances justify a finding of futility, as such a finding would effectively gut the inclusion of the BCNR in the exhaustion process once the Secretary of the Navy initially approves the discharge.

919–20 (D.C.Cir.1979), *clarified on other grounds by,* 627 F.2d 407 (1980)).

However, the court continued, restricted judicial review is not the equivalent of no judicial review. *Id.* "Courts will review, without hesitation, cases in which it is alleged that the military violated the Constitution, applicable statutes, or its own regulations." *Id.* (citing to *Dilley v. Alexander,* 603 F.2d at 920; *Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *Mindes v. Seaman,* 453 F.2d 197, 199 (5th Cir.1971)). "It is established, of course, that the federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations." *Id.* (quoting *Matlovich v. Secretary of Air Force,* 591 F.2d 852, 859 (D.C.Cir.1978)). Therefore, this court reviews the discharge for its compliance with the Constitution, statutes and regulations.

## C. *Regulations and Due Process*

Plaintiff claims that by acting in violation of Naval regulations, the Navy violated his due process rights. *See* Complaint, at ¶¶ 25–31. First, Plaintiff alleges that the Navy violated Section 3610260 of the Naval Military Personnel Manual by separating him on the basis of conduct for which he had been duly acquitted in judicial proceedings. Paragraph 2 of section 361026 states:

> There are specific limitations on separation action. Members may not be separated on the basis of the following: a. conduct that has been subject of judicial proceedings resulting in the acquittal or action having the same effect, except: (1) when such action is based upon a judicial determination not going to the merits of the issue of factual guilt of the Respondent (i.e., a technicality).

The Commanding Officer found that the acquittal of Plaintiff by the military judge in the special court martial was based on a "technical oversight on the part of the trial counsel as opposed to a finding based upon a full adjudication on the merits. Prohibiting a command from administratively processing an individual under the circumstances in this case would not be in the interest of justice and would violate the intended purpose of [the regulation]." Commanding Officer's Approval of Recommendation of Administrative Separation, attached as Exhibit D, at 2.

The administrative board and the Commanding Officer were obviously troubled by the failure of the military judge to allow the government to reopen its case and present expert testimony regarding the meaning of the urinalysis. The Commanding Officer cited to the military judge's decision not to allow the evidence because "of the amount of time since this case was preferred and referred." *Id.* at 2 (quoting military judge). The board stated that the expert witness was in the courtroom, ready to testify, and that the testimony would not have delayed the proceeding. The board noted a regulation stating that "The military judge ordinarily should permit the trial counsel to reopen the case as to the insufficiency specified in the motion." *Id.* (citing R.C.M. 917(c)).

■ The military itself is the primary interpreter of its own regulations. *See Muhammad,* 770 F.2d at 1495 (citing *Hodges v. Callaway,* 499 F.2d 417, 422 (5th Cir.1974)). Where the military has based its actions on a completely reasonable interpretation of the language and purpose of its own regulation, the court is loath substitute its judgment.

■ However, what occurred at the special court martial was a trial on the merits, a military criminal trial under the auspices of the Uniform Code of Military Justice (UCMJ). The judge's disposition was in the nature of a judgment of acquittal, based on the failure of the prosecution to present a part of its case that, while readily available, was essential. To hold that this was "a judicial determination not going to the merits of the issue of factual guilt of the Respondent (i.e., a technicality)," would ignore the nature of the adversary process and the responsibility placed upon the government to prove a prima facie case. This is not a circumstance where the case was dismissed due to the statute of limitations or where there was an improperly charged offense. The case proceeded on its merits with the government failing to sustain its burden of proof.

The administrative review board and the Commanding Officer clearly disagreed with

the military judge's ruling and his failure to allow the prosecution to augment its evidence. However, their disagreement does not change the fact that the military judge was within his sound discretion in making his ruling and did base the ruling on the government's lack of crucial evidence, certainly not on a technicality. Even given the deference due to the Navy's interpretation of its own regulations, the court finds that Plaintiff has raised a serious question on the merits as to the government's compliance with Military Personnel Manual § 3610260.

Further, because the court martial was terminated at the close of the government's evidence, the defendant (Plaintiff here) never had an opportunity to present his witness to the judge. It therefore cannot be said that even if the government had been allowed to re-open its case there would have been a conviction. The judge may still have acquitted the Plaintiff based on testimony by the Defendants' proffered witness.

 At oral argument, counsel for Defendants noted that this issue does not sound in due process, as the subsequent discharge proceeding was not a criminal proceeding. From its initial review of this record, the court disagrees. The Plaintiff here opted for the special court martial, a criminal type proceeding, and by doing so put himself at risk of a bad conduct discharge and imprisonment. He sought out the due process of the special court martial. To allow this process to be denied through the kind of extraordinary procedures followed by the Navy in this case would turn the due process guarantees afforded Plaintiff at the special court martial into rights variable at the whim of the Navy. While the Navy has substantial discretion and is owed substantial deference in conducting its affairs, such a result is outside the realm of their proper function.

 Second, Plaintiff complains that the Navy failed to make reasonable efforts to provide "counseling, retraining, and rehabilitation" prior to separation or even to determine whether Plaintiff would benefit from such assistance. 32 C.F.R. §§ 62.2, 62.4(a)(5) and 62.4(a)(6) make it the policy of the Department of Defense to "[t]reat or counsel alcohol and drug abusers and rehabilitate the maximum feasible number of them," 32 C.F.R. § 62.4(a)(5), and to permit only the "[d]iscipline and/or discharge [of] drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated." 32 C.F.R. § 62.4(a)(6). However, the federal regulations Plaintiff cites also specifically state that "[t]hey do not change definitions in statutory provisions and those regulations and directives that are concerned with determination of misconduct and criminal or civil responsibilities for persons' acts or omissions." 32 C.F.R. § 62.3. Still, the court finds a serious question as to whether the Navy failed to comply with these regulations here.

As to the Navy's own regulations, these regulations do require the consideration of the potential for rehabilitation and further useful naval service where the separation processing is not mandatory. *See* Section 3610100(12). They also state that consideration "should" be given to suspension of the separation where separation is warranted despite the potential for rehabilitation. *Id.* The records submitted to the court do not contain a finding that this separation proceeding was mandatory. The administrative board found no evidence of drug dependency. It also found that Plaintiff was in "alcohol dependency remission" and recommended that Plaintiff be offered treatment for alcohol along with education in the Navy drug program. The Commanding Officer noted this recommendation but made no further findings or comment upon it. At the hearing on this motion, Defendants' counsel stated that he had no information that any finding had been made and was unable to address the issue.

Because the regulations make the consideration of potential for rehabilitation and further useful service mandatory, the court finds that, given the record here, the Plaintiff has raised a serious question on the merits as to whether the Navy complied with its own regulations in seeking to discharge him without such a finding.

D. *Double Jeopardy*

 In order to implicate the protection against double jeopardy of the Fifth Amend-

ment, the government must attempt to "impose punishment for the same offense in two or more separate proceedings." *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1215 (9th Cir.1994). "That protection applies with equal force whether the first prosecution results in a conviction or an acquittal." *Id.* (citing *Burks v. U.S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

There is no doubt that the Plaintiff was subjected to two separate proceedings. The key question under double jeopardy is whether the result of either proceeding would constitute "punishment." In *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1222 (9th Cir.1994), the Ninth Circuit found that civil forfeiture did constitute punishment. The court cited to *United States v. Austin*, —— U.S. ——, ——, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993), where the Supreme Court held that a sanction which is designed even in part to deter or punish will constitute punishment. The court noted that the *Austin* court focused on the entire statute, the historical understanding of the remedy, the purpose of Congress, and the focus on culpability. *$405,089.23*, at 1219. The court finds that the application of these factors to this case create a substantial constitutional question.

In *U.S. v. Smith*, 912 F.2d 322 (9th Cir. 1990), decided prior to *$405,089.23* and *Austin*, the Ninth Circuit held that a discharge based on military charges that were criminal in nature did not constitute punishment and did not implicate double jeopardy. The court stated that "[a]lthough the military charges were criminal in nature, a Chapter 10 discharge is administrative and non-punitive." *Id.* at 324 (citing D. Schlueter Military Criminal Justice § 1–8(B) (2d ed. 1987); *Pickell v. Reed*, 326 F.Supp. 1086, 1089 (N.D.Cal.), *aff'd*, 446 F.2d 898 (9th Cir.), *cert. denied*, 404 U.S. 946, 92 S.Ct. 301, 30 L.Ed.2d 262 (1971)). However, the *Smith* court also reasoned that "[n]o double jeopardy concern is raised when the first proceeding threatens a civil sanction rather than a loss of liberty." *Id.* This statement is called into substantial doubt by *Austin* and particularly by *$405,-089.23*. The Plaintiff will certainly suffer financial loss due to the separation. Further,

as this is a bad conduct discharge, it carries with it the clear stamp of criminal activity.

■■■ The court notes that the history and purpose of the separation from the military has as its primary focus the preservation of the integrity and fighting fitness of the armed forces. Section 3610100 of the Military Personnel Manual states, *inter alia*, that "[t]he policy of the Navy is to promote readiness by maintaining high standards of conduct and performance" and that "[t]he Navy separation policy strengthens the concept that military service is a calling different from any civilian occupation." § 3610100(3). Further, regarding the focus on culpability, there are many reasons aside from criminal conduct that an individual may be separated from the Navy. However, this does not mean that the separation proceedings have no punitive aspect or purpose or that in this case they did not have a punitive intent or effect. "A sanction which is designed even in part to deter or punish will constitute punishment, regardless of whether it also has a remedial purpose." *$405,089.23*, 33 F.3d at 1218 (citing *Austin*, —— U.S. at ——, ——, 113 S.Ct. at 2806, 2812).

While the question of whether these separation proceedings were sufficiently punitive to implicate double jeopardy is a difficult one, resting on a changing conception of the double jeopardy clause in the Supreme Court and the Ninth Circuit, the court finds that it is a serious constitutional question justifying an exception from the exhaustion requirement for the limited purpose of the temporary restraining order and a finding of a serious question on the merits.

In sum, the court finds that the Plaintiff's allegations that the Navy did not follow its own regulations by initiating separation proceedings after a prior acquittal and by failing to consider his potential for further service do raise serious questions on the merits, including serious constitutional questions. This is an extraordinary set of circumstances. Neither the parties nor this court have found a similar situation in any reported decision. Therefore, the court goes on to consider whether the balance of hardships tips in Plaintiff's favor.

## II. Balance of Hardships

█ Plaintiff will suffer harm to earnings and reputation from this discharge, while the Navy will suffer delay and a hampering of its ability to make a prompt separation decision in this case. "[A] discharge ... deprives the affected officer of his livelihood and, when not 'honorable,' can seriously hamper his civilian career." *Denton v. Seamans*, 315 F.Supp. 279 (N.D.Cal.1970), *aff'd*, 483 F.2d 21 (9th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).

However, because of the special status of the military, the Ninth Circuit requires more hardship for granting injunctive relief against a military discharge. In *Hartikka v. U.S.*, 754 F.2d 1516, 1518 (9th Cir.1985), the court reversed a district court's grant of an injunction against the discharge of an Air Force Captain pending the administrative appeal of his discharge "under honorable conditions (general)." The court noted that "[s]uch a discharge is '[a]ppropriate when a member's military record is not sufficiently meritorious to warrant an honorable characterization.'" *Id.* (citing 32 C.F.R. § 41.9(a)(2)). Hartikka had been charged with drunk and disorderly conduct.

In reversing the district court's finding of irreparable injury, the Ninth Circuit cited assertions similar to Plaintiff's:

> Hartikka's claims of irreparable injury are based on assertions of loss of income, loss of retirement and relocation pay, and damage to his reputation resulting from the stigma attaching to a less than honorable discharge.... The loss of income, the ensuing collateral effects thereof, and the possibility of stigma are "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself [and] will not support a finding of irreparable injury."

*Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166 (1974)). The dissent in *Hartikka* noted the fact that "a 'general' discharge is a highly stigmatized discharge," making it "almost impossible for Hartikka to obtain employment in his chosen career in the civilian community." *Id.* at 1519 (dissent) (citations omitted). Nevertheless, the majority found that this was not enough.

Here, the stigma alleged by the Plaintiff is greater. Our society ascribes greater penalties and stigma to cocaine use than it does alcohol abuse and disorderly conduct. Moreover, the designation of the discharge as "other than honorable" and as a bad conduct discharge will stigmatize the Plaintiff in a manner similar to a criminal conviction. This creates significantly more prejudice than the "general discharge" in Hartikka.

The court notes that the interest of the military will be affected by the granting of a TRO in this case. "The military is a specialized society separate from civilian society with laws and traditions of its own developed during its long history." *Guitard*, 967 F.2d at 740 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975) (internal quotations and citations omitted)). Because the ultimate purpose of this institution and its traditions is to protect the public, "the military must insist upon a respect for duty and a discipline without counterpart in civilian life." *Id.* Because of the military's special role and its purpose vis-a-vis the public, the Ninth Circuit has required and this court requires here that the circumstances of the harm alleged by a movant for injunctive relief must be truly extraordinary and the harm truly drastic in order to justify the intervention of this court in the affairs of the military and, as a result, into the trust placed in it by the public.

However, in considering the public interest, the court also believes that the public has a strong interest in having a military that conducts itself fairly and according to its stated regulations and policies. If the military misapplies its own rules and unfairly discharges and stigmatizes a serviceman without giving him the constitutional consideration he is due, this erodes trust in the military. Therefore, the court applies the *Hartikka* test and in this case does find truly extraordinary and dire circumstances which extend beyond the usual circumstances of an employment discharge.

Accordingly, while this court is mindful of the deference and respect due to the military

**516**

and its decisions, it finds here an extraordinary set of circumstances where the integrity of the military and its decisionmaking processes may best be served by this court's review of the decision and the enjoining during that review of the act of discharge that would end Plaintiff's career.

Accordingly, the court finds that the balance of hardships decidedly favors the granting of the TRO.

### CONCLUSION

For the reasons stated above, the court GRANTS the Plaintiff's Motion for a Temporary Restraining Order. The Defendants and their agents are hereby restrained and enjoined from separating or discharging Plaintiff pending this Court's hearing and consideration of Plaintiff's Motion for a Preliminary Injunction. This order shall expire in 10 days unless otherwise agreed by the parties with the approval of this court. The clerk of court is directed to set the matter for hearing on the Motion for Preliminary Injunction.

IT IS SO ORDERED.